In re SAITO.

(Circuit Court, D. Massachusetts. June 27, 1894.)

ALIENS—NATURALIZATION OF JAPANESE.
    A native of Japan, of the Mongolian race, is not entitled to naturalization, not being included within the term "white persons" in Rev. St. § 2169.

Application by Shebata Saito for naturalization.

J. Henry Taylor, for applicant.

COLT, Circuit Judge.    This is an application by a native of Japan for naturalization.

The act relating to naturalization declares that "the provisions of this title shall apply to aliens being free white persons, and to aliens of African nativity and to persons of African descent." Rev. St. § 2169. The Japanese, like the Chinese, belong to the Mongolian race, and the question presented is whether they are included within the term "white persons."

These words were incorporated in the naturalization laws as early as 1802. 2 Stat. 154. At that time the country was inhabited by three races, the Caucasian or white race, the Negro or black race, and the American or red race. It is reasonable, therefore, to infer that when congress, in designating the class of persons who could be naturalized, inserted the qualifying word "white," it intended to exclude from the privilege of citizenship all alien races except the Caucasian.

But we are not without more direct evidence of legislative intent. In 1870, after the adoption of the thirteenth amendment to the constitution, prohibiting slavery, and the fourteenth amendment, de-

claring who shall be citizens, the question of extending the privilege of citizenship to all races of aliens came before congress for consideration. At that time, Charles Sumner proposed to strike out the word "white" from the statute; and in the long debate which followed the argument on the part of the opposition was that this change would permit the Chinese (and therefore the Japanese) to become naturalized citizens, and the reply of those who favored the change was that this was the very purpose of the proposed amendment. Cong. Globe, 1869-70, pt. 6, p. 5121. The amendment was finally rejected, and the present provision substituted, extending the naturalization laws to the African race.

Again, in the first revision of the statutes, in 1873, the words "being free white persons" were omitted, probably through inadvertence. Under the act of February 18, 1875, to correct errors and supply omissions in the first revision, this section of the statute was amended by inserting or restoring these words. In moving to adopt this amendment in the house, it was stated that this omission operated to extend naturalization to all classes of aliens, and especially to the Asiatics; and reference was made to the fact that, a few years before, the proposition of Mr. Sumner, in the senate, to strike out the word "white," had been defeated, and that the committee only proposed, by restoring these words, to place the law where it stood at the time of the revision. The debate which followed proceeded on the assumption that by restoring the word "white" the Asiatics would be excluded from naturalization, and the amendment was adopted with this understanding of its effect. 3 Cong. Rec. pt. 2, p. 1081.

The history of legislation on this subject shows that congress refused to eliminate "white" from the statute for the reason that it would extend the privilege of naturalization to the Mongolian race, and that when, through inadvertence, this word was left out of the statute, it was again restored for the very purpose of such exclusion.

The words of a statute are to be taken in their ordinary sense, unless it can be shown that they are used in a technical sense.

From a common, popular standpoint, both in ancient and modern times, the races of mankind have been distinguished by difference in color, and they have been classified as the white, black, yellow, and brown races.

And this is true from a scientific point of view. Writers on ethnology and anthropology base their division of mankind upon differences in physical rather than in intellectual or moral character, so that difference in color, conformation of skull, structure and arrangement of hair, and the general contour of the face are the marks which distinguish the various types. But, of all these marks, the color of the skin is considered the most important criterion for the distinction of race, and it lies at the foundation of the classification which scientists have adopted. Blumenbach, in 1781, divided mankind into five principal types,—the Caucasian or white, Mongolian or yellow, Ethiopian or black, American or red, and Malay

or brown. Cuvier simplified this classification into Caucasian, Mongol, and Negro, or white, yellow, and black races. Other writers make a still larger number of distinct races. It is said that Prof. Huxley's division of mankind is the most satisfactory. He distinguishes four principal types, and he points out the marked physical characteristics of each. These types are the Australioid (chocolate brown), Negroid (brown black), Mongoloid (yellow), and Xanthochroic (fair whites). To these he adds a fifth variety, the Melanochroic (dark whites). The "fair whites" are the type of the prevalent inhabitants of northern Europe; and the "dark whites," of southern Europe. All these physical differences do not exist in the case of each individual, and "innumerable varieties of mankind run into one another by insensible degrees;" but, taking the race or type as a whole, their peculiarities are sufficiently distinct to form the basis of well-recognized classification. Enc. Brit. tit. "Anthropology."

Before the act of May 6, 1882 (22 Stat. 58, 61), which prohibited the naturalization of Chinese, or when the Chinese and Japanese stood on the same footing under the law, the question of the right to naturalize a Chinaman came before Judge Sawyer in the case In re Ah Yup, 5 Sawy. 155, Fed. Cas. No. 104, and, in a well-considered opinion, the court denied the application. See, also, In re Camille, 6 Sawy. 541, 6 Fed. 256; Elk v. Wilkins, 112 U. S. 94, 5 Sup. Ct. 41; Fong Yue Ting v. U. S., 149 U. S. 698, 716, 13 Sup. Ct. 1016.

Whether this question is viewed in the light of congressional intent, or of the popular or scientific meaning of "white persons," or of the authority of adjudicated cases, the only conclusion I am able to reach, after careful consideration, is that the present application must be denied.

Application denied.