## In re MUDARRI.

(Circuit Court, D. Massachusetts. January 8, 1910.)

1. ALIENS (§ 68*)—NATURALIZATION—PROCEEDINGS—OBJECTIONS BY UNITED STATES.

Naturalization Act June 29, 1906, c. 3592, § 11, 34 Stat. 599 (U. S. Comp. St. Supp. 1909, p. 482), provides that the United States shall have the right to appear to cross-examine the petitioner and the witnesses produced in support of his naturalization petition concerning any matter touching or in any way affecting his right to admission to citizenship, and may call witnesses, produce evidence, and be heard in opposition to the petition. *Held*, that the court will ordinarily admit a petitioner to citizenship in the absence of declared opposition by the United States, and hence it is the duty of the United States attorney to specify his objections, and to support the same by argument.

[Ed. Note.—For other cases, Aliens, Dec. Dig. § 68.*]

2. ALIENS (§ 61*)—NATURALIZATION—"FREE WHITE PERSON"—SYRIANS.

A Syrian born in Damascus is a "free white person," entitled to naturalization under Rev. St. § 2169 (U. S. Comp. St. 1901, p. 1333), providing that the provisions of the title relating to naturalization shall apply to aliens, being free white persons, etc.

[Ed. Note.—For other cases, see Aliens, Dec. Dig. § 61.*

For other definitions, see Words and Phrases, vol. 8, pp. 7446, 7447].

Naturalization proceedings on petition of one Mudarri. Naturalization granted.

William H. Lewis, Asst. U. S. Atty.

LOWELL, Circuit Judge. The petitioner was born in Damascus, and testified that he was a Syrian by race. The United States attorney was asked if he opposed the petitioner's naturalization. He replied that the United States would call the court's attention to the petitioner's birthplace and presumed race; that it would neither approve nor oppose naturalization, but would leave the allowance thereof to the judgment of the court. This course the court deems quite improper, for reasons which may here be stated briefly.

Section 11 of the present naturalization act provides that the United States—

"shall have the right to appear before any court or courts exercising jurisdiction in naturalization proceedings for the purpose of cross-examining the petitioner and the witnesses produced in support of his petition concerning any matter touching or in any way affecting his right to admission to citizenship), and shall have the right to call witnesses, produce evidence and be heard in opposition to the granting of any petition in naturalization proceedings." Act June 29, 1906, c. 3592, 34 Stat. 599 (U. S. Comp. St. Supp. 1909, p. 482).

The court is informed and understands that, by virtue of the section just quoted and of instructions thereupon issued by the Bureau of Naturalization, the United States attorney has made careful inquiry concerning the admissibility of the petitioner in the case at bar, and in like cases. The court is glad to acknowledge the helpfulness of this preliminary inquiry. Without it the examination of the petitioner and of his witnesses in court, whether conducted by the attorney or by the court itself, would be at haphazard, as was the examination by the court before the act of 1906. By the course now adopted, the proof in every case is made satisfactory; while, under the old statute, real proof was very often wanting. But the act of 1906 has done more than help the judge in making an investigation of fact for himself. We need not consider what would be the court's duty if the United States should now take no part in naturalization proceedings. Such a course is practically unthinkable. Where preliminary inquiry has been made; where the attorney attends at the hearing, and in behalf of the United States examines the petitioner and his witnesses with the freedom permitted in cross-examination; where the right to offer additional evidence is fully recognized, being often exercised in like case—the court is ordinarily justified in restricting its function to a decision as between litigants. The court, indeed, is not required to admit the petitioner to citizenship, although the United States assents thereto; but, after a hearing conducted as above described, the court will ordinarily admit to citizenship in the absence of declared opposition by the United States. No more than any other litigant can the United States be permitted to put the court to an independent investigation of law or of fact, without announcing its own contention in the matter. That which the United States is unwilling to support by argument the court need not consider seriously. When this position had been explained to the United States attorney, he promptly and properly announced that the United States opposed the naturalization of the petitioner on the ground that he was not a free white person within the meaning of Rev. St. § 2169 (U. S. Comp. St. 1901, p. 1333). In support of their several contentions, the United States and the petitioner have submitted briefs.

The case at bar is pretty well covered by the opinion of this court in the Halladjian Case, 174 Fed. 834, although what was there said of Armenians does not apply in every respect to Syrians. Those who call themselves Syrians by race are probably of a blood more mixed than those who describe themselves as Armenians. However this may be, the older writers on ethnology are substantially agreed that Syrians are to be classed as of the Caucasian or white race. Modern writers on ethnology, who have departed from the ancient classification, are not agreed in substituting any other which can be applied under section 2169. Inasmuch as Syrians have been classified as above stated, and as this court has long admitted Syrians to citizenship, the petitioner will also be admitted.

While the case at bar is thus free from considerable doubt, yet the court may properly point out that cases of difficulty are likely to arise in construing section 2169, unless its wording is changed and the intent of Congress is made to appear. That section implies a classifica-

tion of some sort. What may be called for want of a better name the Caucasian-Mongolian classification is not now held to be valid by any considerable body of ethnologists. To make naturalization depend upon this classification is to make an important result depend upon the application of an abandoned scientific theory, a course of proceeding which surely brings the law and its administration into disrepute. Here it is impossible to substitute a modern and accepted theory for one which has been abandoned. No modern theory has gained general acceptance. Hardly any one classifies any human race as white, and none can be applied under section 2169 without making distinctions which Congress certainly did not intend to draw; e. g., a distinction between the inhabitants of different parts of France. Thus classification by ethnological race is almost or quite impossible. On the other hand, to give the phrase "white person" the meaning which it bore when the first naturalization act was passed, viz., any person not otherwise designated or classified, is to make naturalization depend upon the varying and conflicting classification of persons in the usage of successive generations and of different parts of a large country. The court greatly hopes that an amendment of the statutes will make quite clear the meaning of the word "white" in section 2169.