In re ELLIS.

(District Court, D. Oregon. July 11, 1910.)

1. STATUTES (§ 188*)—CONSTRUCTION—MEANING OF WORDS.

In construing a statute, words and phrases are to be assumed to have been used in their popular sense, if they have not acquired a technical meaning.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. § 266; Dec. Dig. § 188.*]

2. ALIENS (§ 61*)—NATURALIZATION—"FREE WHITE PERSONS"—"WHITE."

The term "free white persons," within Rev. St. § 2169 (U. S. Comp. St. 1901, p. 1333), making the naturalization provisions applicable to such persons, comprehends a Syrian, who is a native of Palestine and a Maronite; the term "white" being intended to be applied in its popular sense, to denote at least the members of the white or Caucasian race.

[Ed. Note.—For other casts, see Aliens, Cent. Dig. § 119; Dec. Dig. § 61.*

For other definitions, see Words and Phrases, vol. 8, pp. 7446, 7447.]

Application by Tom Ellis for admission to citizenship. Application granted.

Robert C. Wright, Dan J. Malarkey, and E. B. Seabrook, for petitioner.

John McCourt, U. S. Atty.

WOLVERTON, District Judge. This is an application on the part of Tom Ellis, a Turkish subject, for admission to citizenship in the United States. The applicant is a Syrian, a native of the province of Palestine, and a Maronite. He lived near Beirut, which city was his port of departure in coming to this country. Ethnologically, he is of Semitic-stock, a markedly white type of the race. Brinton's Races and People, pp. 99, 105, 132, 137. See, also, Keane's World's People, pp. 307, 310, 335, 337; Deniker's Races of Man, p. 423. From these references, it is admitted by the United States Attorney that the applicant "is a member of what is known as the white or Caucasian race."

"Indeed," he continues, "no contention is made by the naturalization officers of the United States that Syrians do not belong to the white race." Otherwise, the applicant is of good morals, sober and industrious, speaks and writes the English language, has a fair understanding of our institutions and form of government, and is well disposed toward the government, and possesses, without question, all the essential qualifications to entitle him to naturalization, besides being a good and highly respected citizen in the community in which he lives. It may be said, further, that he was reared a Catholic, and is still of that faith.

The essential contention of the government against the admission of the applicant is that the words "free white persons," as used in section 2169 of the Revised Statutes (U. S. Comp. St. 1901, p. 1333), were intended to include only those peoples of the white race who, at the time of the formation of the government, lived in Europe and were inured to European governmental institutions, or upon the American continent, and comprehended such only of the white races who, from tradition, teaching, and environment, would be predisposed toward our form of government, and thus readily assimilate with the people of the United States. There is authority for this view. In re Camille (C. C.) 6 Fed. 256; In re Balsara (C. C.) 171 Fed. 294. And yet there is reason for the view, based upon more recent legislation and the debates in Congress pertaining thereto, that the word "white" was employed to distinguish between the white, the African, and the Mongolian races. In re Saito (C. C.) 62 Fed. 126; In re Ah Yup, 5 Sawy. 155, Fed. Cas. No. 104.

While it may be true that a statute should be interpreted in the light of the conditions prevalent under which it was enacted, yet the words "free white persons" are devoid of ambiguity, and are of plain and simple signification. I know of no technical meaning to be given them in the relation in which they are used in the statute. Applying, therefore, the first and most elementary rule of construction, which is that words and phrases are to be assumed to have been used in their popular sense, if they have not acquired a technical meaning (Endlich, Interpretation of Statutes, § 1), it would seem that the applicant, being a "free white person," is entitled to admission as a citizen. As is said by Sawyer, Circuit Judge, in the case of In re Ah Yup, supra, 5 Sawy. 156, Fed. Cas. No. 104:

"Words in a statute, other than technical terms, should be taken in their ordinary sense. The words 'white person,' as well argued by petitioner's counsel, taken in a strictly literal sense, constitute a very indefinite description of a class of persons, where none can be said to be literally white, and those called white may be found of every shade from the lightest blonde to the most swarthy brunette. But these words, in this country, at least, have undoubtedly acquired a well-settled meaning in common popular speech, and they are constantly used in the sense so acquired in the literature of the country, as well as in common parlance. As ordinarily used everywhere in the United States, one would scarcely fail to understand that the party employing the words 'white person' would intend a person of the Caucasian race."

What is conceded by the government, "that the applicant is a member of what is known as the white or Caucasian race," brings the

case at bar exactly within the authority. If it was designed that the statute was to embrace such of the European races only as in some way by their immigration, alliance, or aid contributed to the settlement of this country and the establishment and upbuilding of the United States as a nation among the peoples of the world, it might have been far better expressed than to have used the simple term "white" as designating the races of men entitled to naturalization. Not having been so expressed or particularized, the most reasonable inference would be that the word "white," ethnologically speaking, was intended to be applied in its popular sense to denote, at least the members of the white or Caucasian race of people. If there be ambiguity and doubt, it is better to resolve that doubt in favor of the Caucasian possessed of the highest qualities which go to make an excellent citizen, as the applicant appears to be, and withal drawn to and well disposed toward the principles and policies of this government. The courts can do no more than interpret the law. It is for the Congress to point the policy of the government, and if the word "white" in its popular sense is of too broad a signification, as applied to persons deemed suitable to become citizens of the United States, the remedy is easily at hand by an amendment of the law.

I am of the opinion that the applicant should be admitted to citizenship, and such will be the order of the court.