### In re TOMARCHIO.

(District Court, E. D. Missouri, E. D.    December 17, 1920.)

#### No. 8867.

1. **Army and navy ☞20—Registrants are bound to know Selective Service Law and rules.**

   Under Selective Service Regulation, § 91, providing for the form and conditions of the questionnaire, and section 6, giving the regulations the effect of law, and charging persons subject to registration with knowledge thereof, every registrant was bound by the rules governing the execution of questionnaire, and cannot plead ignorance of their requirements.

2. **Army and navy ☞20—Registrants bound by actions of scriveners adopted by them.**

   Registrants whose questionnaires were written out by volunteer scriveners, and who thereafter signed and swore to the questionnaires as so prepared, adopted the acts of the scriveners as those of their agents, and cannot avoid the consequences of answers to questions contained therein.

3. **Evidence ☞385—Parol evidence inadmissible to contradict or vary written document.**

   When any judgment or other judicial or official proceeding, or any grant or contract, has been reduced to writing and is evidenced by a document or series of documents, the contents of such documents cannot be contradicted, altered, added to, or varied by parol or extrinsic evidence.

4. **Aliens ☞62—Exemption claim by declarant bars admission to citizenship.**

   Act July 9, 1918, § 2, amending Selective Service Act, § 2 (Comp. St. Ann. Supp. 1919, § 2044b), so as to bar from citizenship one who had declared his intention to become a citizen and thereafter claimed exemption from military service on the ground of alienage, was merely declaratory of the law, and did not add to nor detract from the inherent powers of the court under the naturalization law to hold a plea of alienage in bar of performance of military service a bar of admission to citizenship.

5. **Aliens ☞60—Admission to citizenship is privilege not right.**

   The opportunity to become a citizen of the United States is a mere privilege extended to the alien, and not a right.

6. **Aliens ☞60—Naturalization law should be strictly and uniformly enforced.**

   The Naturalization Act of 1906 should be strictly enforced, and enforced with uniformity, in view of the express requirements of the Constitution that the rule of naturalization shall be uniform.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes.

**7. Aliens ☞62—Exemption claim in any portion of draft questionnaire bars admission to citizenship.**

An alien who, after declaring his intention to become a citizen, claimed exemption from military service on the ground of alienage in any part of the draft questionnaire returned by him, is barred from admission to citizenship, so that one who claimed such exemption on the first page of his questionnaire cannot be naturalized, though, in answer to the question under Series 7, he stated that he did not desire exemption on that ground.

Application for naturalization by Sebastiano Tomarchio. Denied.

M. R. Bevington, Chief Naturalization Examiner, of St. Louis, Mo., and Marguerite Zoff, Naturalization Examiner, of Washington, Mo., for the United States.

DYER, District Judge. The government asks the dismissal of this application upon the ground that the candidate in the draft claimed exemption under class V–F. This motion is resisted on the ground that under Series VII of his questionnaire the candidate stated he had not therein claimed exemption because of his alien status.

More than two years have gone by since the signing of the Armistice, on November 11, 1918, and the last draft registration day, which was September 12, 1918, and in that time details surrounding the execution of questionnaires have all but been forgotten. The importance of the subject is such that there should be preserved in some readily accessible law report (such as the Federal Reporter), a reprint of pertinent portions of the questionnaire form showing just what was required of registrants. I accordingly make a part of this opinion a copy of the notice to those affected by the Selective Service Laws, which appeared at the top of the second page of each and every questionnaire. It is particularly to be noted that the specific instruction is given that each and every portion of the questionnaire must be completed, before any entries whatsoever were made on the first page of such questionnaire:

### IMPORTANT NOTICE TO REGISTRANTS AND OTHER INTERESTED PERSONS.

CAREFULLY READ, OR HAVE READ TO YOU, EVERYTHING ON THIS AND THE FOLLOWING PAGE BEFORE PROCEEDING FURTHER.

#### General Rules Governing the Answering, Execution, and Filing of This Questionnaire.

Every registrant shall immediately upon receipt of a Questionnaire proceed as follows:

He shall first carefully read, or have read to him, the instructions printed on this and the next page of the Questionnaire, and also the particular instructions printed in the Questionnaire with each series of questions.

He shall then take up each series of questions, beginning with Series I, and answer all questions which he is required to answer and sign his name where required by the instructions.

He shall make no mark nor answer upon page No. 1 until he has answered the 12 series of questions; but after having done so and before he executes his affidavit on page No. 15, he shall answer the question near the bottom of page

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

No. 1 and sign his name thereto. If he wishes to waive all claim of exemption or deferred classification, he shall sign the waiver at the bottom of page No. 1.

He shall then upon the first page of the Questionnaire place a cross mark (X) in the space opposite the division which describes his status constituting the ground or basis for deferred classification. The registrant is not limited to making one cross mark (X) indicating his status as to deferred classification, but may make a sufficient number of marks to indicate his status in relation to every ground for discharge or exemption which exists in his case.

He shall then swear or affirm to the truth of his answers by executing the "Registrant's Affidavit" on page 15.

Series VII of the questionnaire, cited in behalf of the candidate, follows:

### SERIES VII. CITIZENSHIP.

**Instructions.—Every registrant must answer the first three questions. If he answers "yes" to all of these questions, he need not answer the remaining questions nor sign his name. If he answers "no" to either question No. 1, 2, or 3, he must then answer the remaining questions and must sign his name.**

Q. 1. Are you a citizen of the United States?  A. 1. ..............
<br>                                                (Yes or no.)

Q. 2. Were you born in the United States?  A. 2. ..............
<br>                                                (Yes or no.)

Q. 3. Were both of your parents born in the United States?  A. 3. .........:
<br>                                                (Yes or no.)

**If your answer to all the questions Nos. 1, 2, and 3 is "yes," do not answer any other questions and do not sign your name. If your answer to either question No. 1, 2, or 3 is "no," answer the following questions and sign your name.**

Q. 4. If you are not a citizen of the United States, have you ever taken out first papers (that is, declared your intention of becoming a citizen) ; if so, when and where?  A. 4. ...................................
..............................................................

**Note.—Registrants, except alien enemies, who are not citizens but who have taken out their first citizenship papers will be classified as citizens and will not be exempted or relieved from military service as aliens.**

Q. 5. If you are not a citizen of the United States and have not declared your intention of becoming a citizen, do you claim exemption from service in the Army of the United States on that ground?  A. 5. ..............
<br>         (Yes or no.)

Q. 6. If you are not a citizen of the United States and have not declared your intention of becoming a citizen, are you willing to return to your native country and enter its military service?  A. 6. ..........
<br>                                                (Yes or no.)

Q. 7. Where and on what date were you born?  A. 7. ...................
..............................................................

**If you are a noncitizen Indian, born in the United States, do not answer questions Nos. 8 to 13, but answer questions Nos. 14 to 16.**

Q. 8. Give the birthplace and present residence of each of your parents.  A. 8. ..................................................
..............................................................

Q. 9. If your parents or either of them live in the United States, state how long each has resided in this country.  A. 9. .....................

Q. 10. If either of your parents has been naturalized in the United States, state (*a*) which parent; (*b*) when and where naturalized.  A. 10. (*a*) .......................; (*b*) ..................

Q. 11. If you were not born in the United States, state (*a*) at what place, and (*b*) on what date you arrived in this country; and (*c*) whether you came with your father or mother or either of them.  A. 11. (*a*) ................; (*b*) .................; (*c*) ................

Q. 12. If you are a naturalized citizen of the United States, state when and where you were so naturalized.  A. 12. ......................... .

Q. 13. Have you ever voted or registered for voting anywhere in the United States; if so, when and where?  A. 13. ..........................
..............................................................

(269 F.)

**If you are an Indian born in the United States and claim you are not a citizen, answer the following questions.**

    Q. 14. State (*a*) when you were allotted; (*b*) when your father was allotted; (*c*) when your mother was allotted. A. 14. (*a*) ..........
        (*b*) .........................; (*c*) ...........................
    Q. 15. Have you received a patent in fee to your land? A. 15. ............
    Q. 16. State (*a*) whether you live separate and apart from any tribe; (*b*) if so, when you intend to return to tribal life; and (*c*) how long you have lived away from tribal life. A. 16. (*a*) ................;
        (*b*) ..............; (*c*) .....................

                     .........................................
Note.—See Sec. 79 S. S. R.                  (Signature of registrant.)

As the last and most important feature, there is set out below a verbatim copy of page 1 of the questionnaire form:

### QUESTIONNAIRE
#### (TO BE USED AFTER JUNE 5, 1918.)

| (Stamp of Local Board.) | Registration No. ............. | Name of Registrant:    Telephone No..... |
| --- | --- | --- |
| | Serial No. .......... | ................................ (Christian name.)    (Surname.) |
| | Order No. ............. | Address ............................... (Street and number or R. F. D.) |
| | | City ....... County ....... State ...... |

☞ **NOTICE TO REGISTRANT.**—You are required by law to return this Questionnaire filled out in accordance with instructions contained herein within seven days from date of this notice. Failure to do so is a misdemeanor punishable by fine or imprisonment for one year and may result in the loss of valuable rights and in immediate induction into military service.

    (Date) ..........................    .........................
                                           *Member of Local Board.*

### CLAIM FOR EXEMPTION OR DEFERRED CLASSIFICATION

NOTE TO CLAIMANTS.—This form is to be used for claiming exemption or deferred classification by or in respect of any registrant and for stating the grounds of claim. Place a cross (x) in Column A opposite the division that states the ground of claim. Boards are required to consider only grounds thus indicated by the claimant in Column A.

| Column A. | Division. | CLASS I. |
| --- | --- | --- |
| .......... | A | Single man without dependent relatives. |
| .......... | B | Married man, with or without children, or father of motherless children, who has habitually failed to support his family. |
| .......... | C | Married man dependent on wife for support. |
| .......... | D | Married man, with or without children, or father of motherless children; man not usefully engaged, family supported by income independent of his labor. |
| .......... | E | Unskilled or not a necessary farm laborer. |
| .......... | F | Unskilled or not a necessary industrial laborer. |
| .......... | G | Registrant by or in respect of whom no deferred classification is claimed or made. |
| .......... | H | Registrant who fails to submit Questionnaire and in respect of whom no deferred classification is claimed or made. |
| .......... | I | All registrants not included in any other division in this schedule. |

## DEFERRED CLASSES.

### CLASS II.

| | | |
|---|---|---|
| .......... | A | Married man with children or father of motherless children, where such wife or children or such motherless children are not mainly dependent upon his labor for support for the reason that there are other reasonably certain sources of adequate support (excluding earnings or possible earnings from the labor of the wife), available, and that the removal of the registrant will not deprive such dependents of support. |
| .......... | B | Married man, without children, whose wife, although the registrant is engaged in a useful occupation, is not mainly dependent upon his labor for support, for the reason that the wife is skilled in some special class of work which she is physically able to perform and in which she is employed, or in which there is an immediate opening for her under conditions that will enable her to support herself decently and without suffering or hardship. |
| .......... | C | Necessary skilled farm laborer in necessary agricultural enterprise. |
| .......... | D | Necessary skilled industrial laborer in necessary industrial enterprise. |

### CLASS III.

| | | |
|---|---|---|
| .......... | A | Man with dependent children (not his own), but toward whom he stands in relation of parent. |
| .......... | B | Man with dependent aged or infirm parents. |
| .......... | C | Man with dependent helpless brothers or sisters. |
| .......... | D | County or municipal officer. |
| .......... | E | Highly trained fireman or policeman, at least 3 years in service of municipality. |
| .......... | F | Necessary customhouse clerk. |
| .......... | G | Necessary employee of United States in transmission of the mails. |
| .......... | H | Necessary artificer or workman in U. S. armory or arsenal. |
| .......... | I | Necessary employee in service of United States. |
| .......... | J | Necessary assistant, associate, or hired manager of necessary agricultural enterprise. |
| .......... | K | Necessary highly specialized technical or mechanical expert of necessary industrial enterprise. |
| .......... | L | Necessary assistant or associate manager of necessary industrial enterprise. |

### CLASS IV.

| | | |
|---|---|---|
| .......... | A | Man whose wife or children are mainly dependent on his labor for support. |
| .......... | B | Mariner actually employed in sea service of citizen or merchant in the United States. |
| .......... | C | Necessary sole managing, controlling, or directing head of necessary agricultural enterprise. |
| .......... | D | Necessary sole managing, controlling, or directing head of necessary industrial enterprise. |

### CLASS V.

| | | |
|---|---|---|
| .......... | A | Officers—legislative, executive, or judicial of the United States or of State, Territory, or District of Columbia. |
| .......... | B | Regularly or duly ordained minister of religion. |
| .......... | C | Student who on May 18, 1917, or on May 20, 1918, was preparing for ministry in recognized theological or divinity school, or who on May 20, 1918, was preparing for practice of medicine and surgery in recognized medical school. |
| .......... | D | Persons in military or naval service of United States. |

| | E | Alien enemy. |
| ......... | F | Resident alien (not an enemy) who claims exemption. |
| ......... | G | Person totally and permanently physically or mentally unfit for military service. |
| ......... | H | Person morally unfit to be a soldier of the United States. |
| ......... | I | Licensed pilot actually employed in the pursuit of his vocation. |
| ......... | J | Persons discharged from the Army on the ground of alienage or upon diplomatic request. |
| ......... | | Member of well-recognized religious sect or organization, organized and existing on May 18, 1917, whose then existing creed or principles forbid its members to participate in war in any form, and whose religious convictions are against war or participation therein. |

REGISTRANT OR OTHER INTERESTED PERSON MUST ANSWER THE
FOLLOWING QUESTION.

Q. Do you claim exemption or deferred classification in respect of the registrant named above? If so, state the divisions of each class and each class in which you claim that he should be classified.

A. ..,......; in Division .... of Class ...., and Division .... of Class ....,
(Yes or no.)
and Division .... of Class .... (Date) ..................................

(Address.) ...................... (Sign here.) ..................... ,

WAIVER OF CLAIM FOR EXEMPTION OR DEFERRED CLASSIFICA-
TION.

(To be signed by registrant or other interested person whenever a waiver is
used.)

I hereby waive all claim of exemption or deferred classification of the registrant named above.

(Date of signing.) .................... (Sign here.) .....................

The "Notice to Registrant" and "Note to Claimants," forming a portion of the above form, and graphically placed therein, are particularly deserving of attention.

Section 91 of the selective service regulations prescribed by the President under the authority vested in him by the terms of the selective service law (Act May 18, 1917 [Comp. St. 1919, Comp. St. Ann. Supp. 1919, §§ 2044a–2044k]) with supplementary and amendatory acts and resolutions, provides:

"(a) The Questionnaire (Form 1001, sec. 268, p. 188) shall consist primarily of a number of questions, divided into 12 series of questions (addressed to and to be answered under oath by every registrant), designed for the purpose of ascertaining the status of every registrant in relation to the various matters, things, and circumstances constituting ground for exemption of deferred classification. The Questionnaire shall also contain, as an integral part thereof, affidavits in support of claims for exemption or deferred classification in certain cases hereinafter specified. It shall also contain particular and specific regulations and instructions to registrants concerning each series of questions and the procuring and filing of certificates and affidavits in certain cases. On the first page of the Questionnaire there shall be printed a notification and instruction requiring the registrant (whose name, together with the date of notice, shall be inserted) to fill out and return the Questionnaire in accordance with the regulations. (See sec. 268.)

"(b) The first page of the Questionnaire shall also contain a place for the registrant or other person to claim exemption or deferred classification and a place for a waiver by the registrant or other person of such claim.

"(c) The answers and affidavits must be signed and sworn to in strict ac-

cordance with these regulations, and in strict conformity with the particular rules and instructions relating to the several series of questions in the Questionnaire itself."

Section 6 of said regulations provides:

"These Rules and Regulations have the force and effect of law, and all registrants, and all persons required by the Selective Service Law and these Rules and Regulations to be registered, and all persons claiming or to claim any right or privilege in respect of any registrant are charged with knowledge of the provisions hereof. Failure by any registrant, or by any person required to be registered, to perform any duty prescribed by the Selective Service Law or by these Rules and Regulations, whether or not the time of the performance of such duty is required by these Rules and Regulations to be posted or entered in the records of the Local or District Board, and whether or not formal notice is required by these Rules and Regulations to be given (such as registering and reporting change of status and other duties), is a misdemeanor punishable by imprisonment for one year, and may result in loss of valuable rights and privileges and immediate induction into the military service; and such failure shall also be considered as a waiver of any right or privilege which might have existed in favor of such person if he had performed such duty."

We have presented the question of whether a candidate may evade the consequences of a claim for exemption from military service on the ground of alienage, appearing on page 1 of his questionnaire, through specifically reciting under Series VII thereof that he made no such claim, or through not answering said Series VII at all, or so answering as to make it impossible to determine his real attitude.

[1] There can be no question but what every registrant was bound by the rules governing the execution of questionnaires. Under said rules, he was first required to acquaint himself with the demands made on him by the Selective Service Act, then to execute as prescribed all portions of his questionnaire other than page 1, following which he was to consolidate on said page 1 such claims as he may assert, and which represented those claims alone that were actually binding on the draft board. It is to be further remembered that all questionnaires were executed under the solemnity of an oath.

In the consideration of a case such as this notice must be taken of the psychological phenomena below discussed. Candidates, who during the war pleaded their alien status in bar to the performance of military duty, will now be found most vehement in their protestations of loyalty, and of their yearning to take up arms in defense of the country of their adoption. Fighting ceased some two years ago, and there is now no longer any danger attached to their tardy proffers of military assistance. When soldiers were needed, however, these fair-weather friends were to be found tying the hands of the local draft boards through pleading their alien status. And they now state their war records as made up by their questionnaires work an injustice, due to the fact the claims made therein are inconsistent with their real mental attitude.

[2] In support of this, the claim is made that in very considerable numbers of instances, more or less incompetent scriveners had to be employed, these being generally overworked and sometimes somewhat callous volunteers from the local bar. But it cannot be escaped that

these scrivener attorneys, who aided registrants at the headquarters of local draft boards, acted as the agent of the party whose questionnaire was filled out. The law placed upon the registrant the duty of acquainting himself with all requirements under the Selective Service Act. This he could not then, and cannot now, shift to the shoulders of another. When he signed and swore to this questionnaire, that document became his writing, and all responsibility for what may be contained therein was assumed by him. He cannot at this late date escape the consequences of declarations against interest contained therein, by any resort to impeachment of the questionnaire. Any attempt to contradict or vary or explain away the matters reduced to writing in the said questionnaire would be a violation of the parol evidence rule.

[3] As was most clearly stated in Northern Assur. Co. v. Grand View Bldg. Ass'n, 183 U. S. 324–332, 22 Sup. Ct. 133, 46 L. Ed. 213, it is a well-established rule of the common law, which has been embodied in statutes in a number of states, that when any judgment of any court, or any other judicial or official proceeding, or any grant or other disposition of property, or any contract, agreement or undertaking has been reduced to writing, and is evidenced by a document or series of documents, the contents of such documents can not be contradicted, altered, added to, or varied by parol or extrinsic evidence. To the same effect is Lumber Underwriters v. Rife, 237 U. S. 605, 35 Sup. Ct. 717, 59 L. Ed. 1140. Both at law and in equity, parol testimony is inadmissible to vary a written instrument. Forsythe v. Kimball, 91 U. S. 291, 23 L. Ed. 352; Richardson v. Hardwick, 106 U. S. 252, 1 Sup. Ct. 213, 27 L. Ed. 145. Parol evidence to contradict, or substantially to vary, the legal import of a written agreement, is inadmissible. Renner v. Bank of Columbia, 9 Wheat. 591, 6 L. Ed. 166; Union Selling Co. v. Jones, 128 Fed. 674, 675, 63 C. C. A. 229. See, also, Brown v. Spofford, 95 U. S. 480, 24 L. Ed. 509; Gill v. General Electric Co., 129 Fed. 351, 64 C. C. A. 101; Blue Mountain Iron & Steel Co. v. Portner, 131 Fed. 60, 65 C. C. A. 298; Pitcairn v. Philip Hiss Co., 125 Fed. 110, 61 C. C. A. 657; Hirsch v. Georgia Iron & Coal Co., 169 Fed. 578, 95 C. C. A. 76.

It necessarily follows that the original questionnaire of a given registrant constitutes solemn acts, declarations, and admissions against interest, which cannot be impeached, contradicted, varied, or explained away by parol evidence. It is plain, also, that any different rule would greatly increase the temptations of registrants to commit perjury. The parol evidence rule, above considered, has always been regarded as one of the greatest barriers against both fraud and perjury. It is not to be modified in any particular in a case such as this.

In the case of In re Silberschutz (D. C.) 269 Fed. 398, the rule of law pertaining in cases such as this has been considered at considerable length. In the Silberschutz Case, however, the petitioner was an enemy alien. In the instant case, the petitioner is an Italian subject.

[4] By an act of Congress approved July 9, 1918, section 2, sentence 2 of the act approved May 18, 1917 (Selective Service Act

[Comp. St. Ann. Supp. 1919, § 2044b]), has been amended to read as follows:

"Such draft as herein provided shall be based upon liability to military service of all male citizens or male persons not alien enemies who have declared their intention to become citizens between the ages of 21 and 30 years, both inclusive, and shall take place and be maintained under such regulations as the President may prescribe not inconsistent with the terms of this act: Provided, that a citizen or subject of a country neutral in the present war who has declared his intention to become a citizen of the United States shall be relieved from liability to military service upon his making a declaration, in accordance with such regulations as the President may prescribe, withdrawing his intention to become a citizen of the United States, which shall operate and be held to cancel his declaration of intention to become an American citizen, and he shall forever be debarred from becoming a citizen of the United States."

(Note. The following countries were not neutral during the World War, to wit: Belgium, Brazil, China, Costa Rica, Cuba, France, Great Britain, Greece, Guatamala, Haiti, Honduras, Italy, Japan, Liberia, Montenegro, Nicaragua, Panama, Portugal, Russia, San Marino, Serbia, Siam, Austria-Hungary, Germany, Bulgaria, and Turkey. All other countries were neutral.)

But this was merely declaratory of the law. It neither added to, nor detracted from, the power inherent in the courts under the naturalization laws to hold a plea of alienage in bar to the performance of military service operated likewise as a bar to admission to citizenship. The bona fides of the intent and desire of an applicant for American citizenship constitutes one of the salient and material issues involved in a naturalization proceeding. The attitude, conduct, and actions of a candidate, as disclosed in his questionnaire, are matters that must be taken judicial notice of, in a naturalization proceeding; and where in such questionnaire the petitioner is shown to have anywhere claimed exemption from military service on the ground of alienage, he is not eligible or qualified to be, nor should be, admitted to American citizenship. The courts seem to be in more or less uniformity as to this.

Counsel for the government submit a statement showing that for the period beginning July 1, 1919, and ending June 30, 1920, applications for naturalization have been denied by the United States District Courts sitting at Kansas City, and at St. Joseph, Mo., at Ft. Dodge, Iowa, at Wichita, Kan., at Ft. Smith, Ark., and at Muskogee and Guthrie, Okl., where it has been established that the alienage has been pleaded under the selective service laws as a bar to the performance of military service. The circuit courts for Jefferson and White counties, Ark., have taken the same position, as have the circuit courts for Christian, Franklin, Jackson, Madison, Marion, Monroe, Montgomery, Pulaski, St. Clair, and Saline counties, Ill. The same rule appears also to have been followed by the city courts of Alton, East St. Louis, Granite City, and Herrin, Ill.; in Iowa, the district courts of Appanoose, Benton, Blackhawk, Boone, Buchanan, Butler, Calhoun, Cass, Cedar, Cerro Gordo, Cherokee, Clayton, Clinton, Crawford, Dallas, Delaware, Des Moines, Fayette, Floyd, Franklin, Grundy, Guthrie, Hamilton, Hancock, Hardin, Harrison, Howard, Ida, Iowa, Jones, Kossuth, Lee, Lyon, Mitchell, Monroe, O'Brien, Osceola, Plymouth, Pocahontas, Polk, Pottawattamie, Scott, Shelby, Sioux, Story, Tama, Washington, Webster, Winneshiek, and Woodbury counties follow

the same rule, as does the superior court for Cedar Rapids, Iowa; in Kansas, the district courts for Atchison, Barton, Butler, Cloud, Crawford, Ellis, Ellsworth, Finney, Harvey, Johnson, Kingman, Leavenworth, Lincoln, McPherson, Mitchell, Nemaha, Reno, Russell, Shawnee, Trego, and Wyandotte counties are in like agreement; in Missouri, the circuit courts for Franklin, Nodaway, Pettis, and St. Charles counties hold likewise; in Nebraska, the district courts for Adams, Buffalo, Cass, Cedar, Clay, Colfax, Cuming, Dawson, Dodge, Douglas, Gage, Hall, Hamilton, Hayes, Holt, Kearney, Lancaster, Madison, Otoe, Perkins, Platte, Saunders, Scotts Bluff, Thayer, Thurston, Valley, and Washington counties are shown to adhere to the rule in question; and in Oklahoma, the district courts for Alfalfa, Blaine, Kay, Okmulgee, and Pottawatomie counties pursue the same rule of law. These states represent the naturalization district that has local headquarters in St. Louis, and which is under jurisdiction of the officers presenting this case on behalf of the United States.

[5] We must not lose sight of the fact that the opportunity to become a citizen of the United States is a mere privilege, and not a right. Johannessen v. United States, 225 U. S. 240, 32 Sup. Ct. 613, 56 L. Ed. 1066; United States v. Ginsberg, 243 U. S. 474, 475, 37 Sup. Ct. 422, 61 L. Ed. 853. While every worthy candidate for naturalization should be aided and welcomed, the interests of our body politic require that we withhold citizenship until the entire worthiness of the applicant concerned is fully known and established. Under present conditions, we confer naturalization on all against whom the Naturalization Service is not able, with its extremely limited means of inquiry (the Naturalization Office at this point has one field examiner to about each 125 courts of naturalization in its district), to prove unworthiness. In the case of In re Goldberg (D. C.) 269 Fed. 392, there is discussed more or less at length the reasons leading up to the enactment of the existing naturalization statute.

[6] Following the prosecutions of which Levin v. United States, 128 Fed. 826, 63 C. C. A. 476, and Dolan v. United States, 133 Fed. 440, 69 C. C. A. 274, were the outgrowth, I was privileged to submit recommendations for legislation designed to eliminate the fraudulent practices then prevailing in naturalization matters. The Act of June 29, 1906 (34 Stat. pt. 1, p. 596), which was enacted at the suggestion of then President Theodore Roosevelt, contained substantially the suggestions submitted at the time by me. Since then, in the Circuit and District Courts for the Eastern Division of the Eastern Judicial District of Missouri, it has been my duty as judge to hear and determine in round numbers some 10,000 naturalization applications. This experience convinces me that any relaxation of the terms of the aforesaid Act of June 29, 1906, whether judicial or administrative, can only work irreparable harm to the country. The law should be strictly enforced. Nothing brings any law into greater disrepute than its spineless enforcement, unless it be its erratic enforcement. In other words, consistency in interpretation and enforcement is absolutely essential.

To say, as many of these military "slacker" candidates are wont to contend, that every naturalization case must be considered on its individual merits, is the sheerest sophistry, being equivalent to saying that the law is to be differently construed in connection with every case—if there are 100,000 cases, then there shall be 100,000 different interpretations of the law; this despite the fact the Constitution of the United States in express terms provides that it shall be a uniform rule, without compliance with which citizenship may, of course, not be lawfully procured. I therefore take this opportunity to call attention to the fact that while the courts have a duty to perform in naturalization matters; so, also, has the executive branch of the government charged with the administration of the Naturalization Act, to wit, the Naturalization Service. As was succinctly stated by Circuit Judge Lowell, in Re Mudarri (C. C.) 176 Fed. 466, the United States cannot "put the court to an independent investigation of the law or of fact, without announcing its own contention in the matter." That which the United States is unwilling to support by argument the court cannot consider. The withholding from the court of any facts to which it is entitled cannot be countenanced.

This is the one defect of the existing naturalization statute. Should the opportunity ever again present itself to me to recommend changes in the said statute, from my experience in these matters I would recommend such amendment as would insure the court in every case being put in possession of every fact, so that it would be in a position to dispose of every issue as the law might require. As it now is, the Naturalization Service has the facts. Whether the court receives those facts is dependent on whether the said service, in pursuit of its administrative policy, sees fit to present the same. This is a condition of affairs that should be corrected, as for want of evidence presented, and objections properly interposed, a court can be stripped of all opportunity to itself determine the disposition to be made of a given application for naturalization. Regardless of whether this administrative control, possessed by the executive branch of the government over the subject of naturalization, has ever been abused, or not, it cannot be questioned, but what the situation discussed should be so treated in any revision of the law as to insure without question the trial courts being acquainted with every feature developed in the preliminary investigation of each and every case. Such a course can only strengthen the hold of the Naturalization Service on the affections of the public, which demands, not merely an honest enforcement of the statute, but a lawful and fearless enforcement as well. The courts will gladly assume their share of personal responsibility for such lawful, honest, and fearless enforcement.

Paragraph (e) of section 79 of the selective service regulations expressly provides that no enemy alien will be accepted for military service, and states local boards will be held personally responsible that no such enemy alien shall be placed other than in class V. Therefore it was not necessary in any instance for such a registrant to set up the plea of alienage. The draft board, in any instance, on its own motion, was charged by law with the duty of properly classifying all such

parties. Enemy aliens were admittedly in an embarrassing position during the war. If the heart of any such registrant was truly with America, he could not have better demonstrated this than by signing the waiver to deferred classification at the foot of page 1, and by omitting in any other place on said page 1 any claim whatsoever based on his enemy alien status. As to friendly aliens, nationals of the countries associated with the United States in the World War, and as to neutral aliens, any plea of alienage set up by them must be held to be a deliberate attempt to evade military service altogether; and all such claims, regardless of whether made by enemy, friendly, or neutral aliens, must be considered in connection with any naturalization application that may be filed by them.

[7] It accordingly follows that the dominant feature is whether alienage was pleaded in any portion of the questionnaire. It is immaterial, for naturalization purposes, where in the questionnaire such claim was set up, or the manner in which it was asserted. If made anywhere, in any manner, that fact, for the reasons stated in Re Silberschutz, supra, must necessitate the denial of the application for citizenship. In the instant case, the candidate, an Italian subject, having on page 1 of his questionnaire asserted his alienage as a bar to military service, his declaration of intention will be declared cancel-ed, and his petition for naturalization denied with prejudice.