In re CRUZ.

No. 229223.

District Court, E. D. New York.
June 22, 1938.

BYERS, District Judge.

This application for naturalization embodies an affidavit containing the following:

"My mother is half African and half Indian and my father is a full blooded Indian. I learned this information from them when I was a small child. I believe that my father's ancestors were all full blooded Indians."

Decision was reserved at the hearing before the Court because of the language of R.S. § 2169 (Title 8 U.S.C. § 359, 8 U.S.C.A. § 359) reading in part as follows:

"§ 359. *Racial limitation of naturalization; free white persons and Africans.*

The provisions of this chapter shall apply to aliens being free white persons, and to aliens of African nativity and to persons of African descent * * *."

The question for decision is whether the petitioner is a person of African descent, within the contemplation of the statute.

Seemingly the subject has not been passed upon in any reported case.

The statute was evidently intended to qualify for naturalization all persons born in Africa and the descendants of such (including Negroes), and the inquiry seems to be whether a person who is one-quarter Negro is of "African descent". Stated differently: Did Congress intend a broader classification with reference to persons of African descent than in designating "free white persons"? As to the latter, see Morrison v. California, 291 U.S. 82, 54 S.Ct. 281, 78 L.Ed. 664. The following language occurs in the opinion, at page 86, 54 S.Ct. at page 283:

"The privilege of naturalization is denied to all who are not white (unless the applicants are of African nativity or African descent); and men are not white if the strain of colored blood in them is a half or a quarter, or, not improbably, even less, the governing test always (United States v. Bhagat Thind [261 U.S. 204, 214, 43 S.Ct. 338, 67 L.Ed. 616]) being that of common understanding." (Citing cases.)

It is necessary therefore to ascertain whether there is a common understanding as to what is meant by the expression "African descent".

An interesting discussion will be found in an article entitled "Race Distinctions in American Law" (43 American Law Review 29). At page 39, it is said:

"Some of the states have set down arbitrary definitions of persons of color and Negroes and mulattoes * * *.

"Picking these definitions, many of them, out of the midst of other statutes, I find that Alabama, Kentucky, Maryland, Mississippi, North Carolina, Tennessee and Texas define one as a person of color who is descended from a Negro to the third generation inclusive, though one ancestor in each generation may have been white. Florida, Georgia, Indiana, Minnesota, Missouri and South Carolina declare that one is a person of color who has as much as one-eighth Negro blood; Nebraska and Oregon say that one must have as much as one-fourth Negro blood in order to be classed with that race. Virginia and Michigan apparently draw the line similarly. In Virginia, a marriage between a white man and a woman who is of less than one-fourth Negro blood, 'though it be only a drop less', is legal. * * * In 1867, Michigan, which at the time limited the suffrage to 'white male citizens', held that all persons should be considered white who had less than one-fourth of African blood."

The article was written in 1909, and it is probable that some of the citations have become obsolete, but the quotation will suffice to demonstrate a lack of such common understanding as would tend to lay bare the legislative purpose as embodied in the statute above quoted.

It is to be remembered that, if this petitioner were of one-quarter white blood and three-quarters Indian, he could not be admitted to citizenship as a white person. See: In re Camille, C.C., 6 F. 256; In re Knight, D.C., 171 F. 299; In re Lampitoe, D.C., 232 F. 382; In re Young, D.C., 198 F. 715; In re Fisher, D.C., 21 F.2d 1007.

It would therefore seem entirely incongruous to reason that the words "African descent" should be construed to be less exacting in denoting eligibility for naturalization, than the term "white persons".

The opinion therefore is presently held that, in order for a petitioner to qualify under the statute, his African descent must be shown to be at least an affirmative quantity, and not a neutral thing as in the case of the half blood, or a negative one as in the case of the one-quarter blood.

For these reasons, the petition must be denied.