## FORSYTHE *v.* KIMBALL.

In the absence of fraud, accident, or mistake, the rule is the same in equity as at law, that parol evidence of an oral agreement alleged to have been made at the time of the drawing, making, or indorsing a bill or note, cannot be permitted to vary, qualify, or contradict, or to add to or subtract from, the absolute terms of the written contract.

APPEAL from the Circuit Court of the United States for the Northern District of Illinois.

The facts are stated in the opinion of the court.

Submitted on printed arguments by *Mr. W. C. Goudy* for the appellant, and by *Mr. John L. Thompson* for the appellee.

MR. JUSTICE SWAYNE delivered the opinion of the court.

The case made by the bill is as follows: —

The appellant, John Forsythe, negotiated a loan of $5,000 from the insurance company. He had four brothers. For $4,000 of the amount loaned, he and each of his brothers gave a separate note of $800. Ten notes of $200 each, signed by all the parties, were given for the interest, which was to be paid semi-annually, at the rate of ten per cent per annum. The notes all bore date on the 5th of January, 1869. Those for the principal were to be paid at the end of five years. At the same time, Robert H. Forsythe, one of the brothers, gave for the residue of the loan his note for $1,000, of the same date with the five notes of $800 each. He also then gave his ten notes of $50 each for the interest, which was at the same rate as that upon the notes of $800, and payable at the same times. The notes were all made payable to J. Y. Scammon, or order.

Four thousand dollars of the money loaned was invested in real estate, and the title taken to the five brothers who had executed the five notes of $800. They secured those notes and the ten interest notes by a mortgage on the premises. The $1,000 for which Robert H. Forsythe gave his notes was invested in land which was conveyed to him, and he secured his notes by a mortgage upon it. Scammon was an active officer of the insurance company. When the loan was negotiated and consummated, the appellant, as an inducement to the company to make it, assumed and promised by parol to pay all the notes above mentioned, both for principal and interest. Upon receiving the securities, Scammon indorsed and transferred them to the insurance company. The appellant insists that the $5,000 was lent by the company, and not by Scammon, and that the loan was to him, and in no part to the other parties who executed the notes. The appellant paid all the interest notes, amounting to $1,250, which fell due prior to the 9th of October, 1871. His brothers are irresponsible, and paid nothing. On the day last named the great Chicago fire occurred. He held fire-policies issued by the company upon buildings which were consumed. The company thus became indebted to him to the amount of $11,000. His losses were settled and adjusted at that sum. No part of it has been paid. On the 28th of April, 1873, his four brothers conveyed to him their rights and titles to the several mortgaged premises.

He seeks to have the amount due to him from the insurance company set off against all the notes, so far as shall be necessary to satisfy and extinguish the latter.

The answer of the assignee denies that the money in question was borrowed from the insurance company, and avers that the company bought the notes from Scammon for a valuable consideration.

The court decreed that the appellant was entitled to a set-off as claimed for the amount of his note of $800, and for his proportionate share of the several interest notes which he had executed. From this decree he appealed to this court.

Upon looking into the record, we find that no testimony was taken upon either side but that of the appellant, which was taken for himself.

In his deposition are the following questions and answers: —

" *Q.* Did you borrow any sum of money from the Mutual Security Insurance Company in the year 1869? If so, state when you borrowed the money, and the amount.

"*A.* I borrowed the sum of $5,000 from said company on or about the fifth day of January, 1869.

" *Q.* What officer of the Mutual Security Insurance Company besides Scammon did you have any conversation with in reference to this loan, if any?

"*A.* Scammon was the only officer of the company.

" *Q.* Do you know whether the money that was paid for this land originally was the money of the company, or the money of Scammon?

"*A.* Scammon paid over the money; but whether it was the company's money or Scammon's, that I don't know.

" *Q.* Why were the notes made payable to Scammon?

"*A.* Because the officers of the company wanted Scammon to take the responsibility of making the loan. He was managing the notes of the company; and he was willing to indorse the notes, knowing all the parties, and looking to me to be the responsible party.

" *Q.* Did you make any agreement or promise to pay these notes, or any part of them? and, if so, what agreement or promise did you make about it?

"*A.* I agreed with Scammon that I would pay the notes, and be responsible for them.

" *Q.* How much of them?

"*A.* All of them."

This is all the deposition contains which is material to the points in controversy between the parties.

The burden of proof rests upon the appellant. His own testimony is weak and inconclusive. The case fails upon the evidence.

It must fail also upon a well-settled principle of law.

If it were clearly proved, as alleged, that the entire sum of $5,000 was lent to the appellant, and that he expressly agreed at the time the securities were executed to pay back himself the entire amount at the end of five years, and to pay the interest in the mean time as stipulated, such proof would be wholly inconsistent with the contract of the parties as reduced to writing, and would, therefore, be unavailing either for or against him. "It is a firmly settled principle, that parol evidence of an oral agreement alleged to have been made at the time of the drawing, making, or indorsing of a bill or note, cannot be permitted to vary, qualify, or contradict, or add to or substract from, the absolute terms of the written contract." 2 Pars. on Bills & Notes, 501; *Specht* v. *Howard*, 16 Wall. 564. It is not claimed that there was either fraud, accident, or mistake touching the securities that were executed.

Under these circumstances, the rule is the same in equity as at law. 2 Story's Eq., sect. 1531.

It is neither alleged nor proved that the mortgage given by the appellant and his brothers was not sufficient to secure him against their shares of the notes executed jointly by him and them. Their shares of the premises have been conveyed to him.

The indemnity is, therefore, in his own hands.

All was given below to the appellant to which in any view of his case he can be deemed entitled.

*The decree of the Circuit Court is affirmed.*