# STREEPER & Another *v.* VICTOR SEWING MACHINE COMPANY.

### APPEAL FROM THE SUPREME COURT OF THE TERRITORY OF UTAH.

Submitted December 15, 1884.—Decided January 5, 1885.

A written agreement between a company making sewing machines, and a consignee to receive and sell them on commission, provided that the commission should be calculated on the retail prices for which the machines should be sold, as reported by the consignee, and that attachments should be sold to the consignee at the lowest wholesale rates. The proceeds of sales of machines, beyond the commission, belonged to the company. In a suit by it against the consignee and a person liable with him, on a bond for his indebtedness, to recover such proceeds, and the sale price of attachments, the complaint set forth schedules showing the retail price of each machine sold, as so reported, and the excess of money, beyond commission, retained

by the consignee, and the price of each attachment sold to the consignee :
*Held,* That the complaint was sufficient.

The consignee and another person united in a bond to the company, conditioned
that the former should pay to it all moneys which should become due under,
or arise from, the written agreement, and waiving notice of non-payment :
*Held,* That the liability of the surety arose on the bond, and that of the con-
signee on the bond or the written agreement, and that the statute of limita-
tions in regard to written instruments governed the case.

The condition of the bond extended to the payment of notes made or indorsed
by the consignee, and transferred to the company.

So far as the surety was concerned, his waiver or notice applied to a default by
the consignee.

The facts are stated in the opinion of the court.

*Mr. J. G. Sutherland* and *Mr. John R. McBride* for ap-
pellants.

*Mr. Charles W. Bennett* for appellee.

MR. JUSTICE BLATCHFORD delivered the opinion of the court.

This suit was brought in the District Court of the Third
Judicial District of the Territory of Utah, on the 13th of
June, 1879, by the Victor Sewing Machine Company, against
two persons named Crockwell and Bassett, and two others
named Streeper and Murphy.  On the 28th of June, 1875, the
company, of one part, and Crockwell and Bassett, of the other,
entered into a written agreement, whereby the former was (1)
to deliver sewing machines to the latter, as consignees at
Chicago, on their order ; (2) the latter to sell them in Utah Ter-
ritory, and, if possible, for cash ; all promissory notes taken to be
guaranteed by the latter and delivered to the former ; indorse-
ment of the notes by the latter before such delivery to be such
guaranty ; all notes taken to be payable to the order of the
former, not more than twelve months from the date of sale ;
(3) the latter to sell all consigned machines and remit for them
within four months from date of shipment ; on failure to so sell
and remit, the former, after the four months, to be at liberty to
charge the latter with all machines consigned four months, and
not settled for, at their retail price, less forty per cent., and such
amounts to be immediately due on demand ; (4) the latter to

report every week machines on hand, and those sold, with terms of sale, and remit the proceeds of sale; (5) on report, and remittance, and approval, the former to credit the latter as follows: On a cash remittance of one-half of the retail price of machines sold, fifty per cent. of their retail price; on sales for notes running not more than six months from sale, forty-five per cent. of such retail price; on sales for notes running more than six, and not more than nine, months from sale, forty per cent. of such retail price; on sales for notes running more than nine, and not more than twelve, months from sale, thirty-five per cent. of such retail price; the latter to be charged with the difference between the amounts remitted and the retail prices reported, and to remit such an amount as will equal the retail price of the machines reported sold (less said commissions), with five per cent. of the retail price of machines sold for notes, such five per cent. to remain with the former till the termination of the contract, and the payment of all notes taken under it, and, after deducting therefrom the cost of collecting the notes, and expenses of settling the contract, the former to pay to the latter such part of the five per cent. as should be due to them; (6) the former to sell parts of their machines at forty per cent. discount from list prices, and attachments at the lowest wholesale rates, both to be settled for with cash every thirty days, unless time should be agreed for, when twenty per cent. should be added to regular cash prices; (7) the former to be at liberty to terminate the contract, and retake their property at any time, charging the latter for loss of or damage to machines; the latter to have the right to take the machines at the retail price as if new, less forty per cent.; the latter to be sole agents for certain counties in Utah while satisfactorily performing the contract; (8) the latter to pay a monthly rent for each wagon furnished by the former; the former to have the right to make, on notice, certain variations in the time of the notes; the latter to be at liberty, for such machines as they shall dispose of during each month otherwise than for cash or note, to give their personal notes, on an average of six months' time, at the retail price of the machines, less forty per cent., or their personal notes on an average of nine months' time, at the retail

price of the machines, less thirty-five per cent. ; the former to have the right to terminate and renew this last provision at their election.

On the 3d of July, 1875, the four defendants executed. on the back of said agreement, a joint and several bond, under seal, to the plaintiff, in the penalty of $3,000, with the following condition: " The condition of this obligation is such, that if the above bounden George Wallace Crockwell and Charles Henry Bassett, Jr., shall pay unto said Victor Sewing Machine Company all moneys due, or which shall become due, to said Victor Sewing Machine Company, under or pursuant to the within contract, or which shall arise therefrom, whether by book accounts, notes, renewals or extensions of notes or accounts, acceptances, indorsements, or otherwise, hereby waiving presentment for payment, notice of non-payment, protest or notice of protest, and diligence, upon all notes now or hereafter executed, indorsed, transferred, guaranteed, assigned, and shall well and truly keep and perform, in all respects, according to its true intent and meaning, the contract or agreement to which this obligation is attached, executed between the said Victor Sewing Machine Company and G. W. Crockwell and C. H. Bassett, Jr., dated at Salt Lake City, the 28th day of June, 1875, then this obligation to be void; otherwise, to remain in full force and virtue. But said contract may be varied or modified by the mutual agreement of said Sewing Machine Company and said G. W. Crockwell and C. H. Bassett, Jr., as to the manner of carrying on said business, or as to the time on which notes taken shall be drawn, or as to the compensation to be paid to said G. W. Crockwell and C. H. Bassett, Jr., or as to the period at which said G. W. Crockwell and C. H. Bassett, Jr., shall report to said company for the machines they may sell, or as to the territory on which said machines shall be shipped or sold, or as to the place from which said machines shall be shipped, and such changes and modifications or variations shall in nowise affect or impair our liability on this bond."

This suit is brought to recover the amount of the penalty of the bond. The complaint sets forth *in hæc verba* the agree-

ment and the bond, and alleges that the defendants failed to perform the condition of the bond that Crockwell and Bassett should perform the agreement, in that, (after reciting the provisions of clauses four and five of the agreement), between July 3, 1875, and February 10, 1876, the plaintiff, at the request of Crockwell and Bassett, consigned to them, under the agreement, divers sewing machines, which they sold before 1878, but they did not remit the proceeds, or the part to which the plaintiff was entitled, to the amount of $146.82, "a detailed and itemized account of which said sales, showing the machines received from plaintiff and sold by said Crockwell and Bassett, and the amounts remitted, with the proper credits thereon, and the amounts due and not remitted, as well as the balance thereon now due plaintiff, is hereto attached, marked Exhibit A, and made a part of this complaint." Exhibit A is a commission account, Crockwell and Bassett with the company, containing sales reported, with prices, and notes received, with dates, times, and amounts, and in which Crockwell and Bassett are debited with moneys retained by them, and rent of wagon and collection charges, and a machine consigned over four months, and commission before allowed and now charged back on a machine returned, and are credited with their commissions, and the amounts of the notes taken for the returned machine, showing a balance of $146.82 due to the plaintiff.

The complaint further alleges, that the defendants failed to perform the condition of the bond that Crockwell and Bassett should pay to the plaintiff all moneys due or to become due to it under the agreement, and should perform the agreement, in that, the plaintiff, between July 3, 1875, and February, 1876, under clause six of the agreement, at the request of Crockwell and Bassett, consigned to them parts of machines at forty per cent. discount from list prices, and attachments at the lowest wholesale rates, to be settled for in cash by them every thirty days, unless time was agreed for, when twenty per cent. was to be added to regular cash prices; but Crockwell and Bassett did not settle therefor, with cash, in thirty days, and had not paid therefor; that the money which, by clause six, they were required to pay to the plaintiff, amounted to $87.97;

and that " a detailed and itemized account, showing the parts of machines and attachments so furnished Crockwell and Bassett, and the amounts paid plaintiff therefor, and showing the amounts which should have been, but were not, paid plaintiff by defendants Crockwell and Bassett, with the balance now due plaintiff by Crockwell and Bassett, is hereto attached, marked Exhibit B, and made a part of this complaint." Exhibit B is an attachment account, by items, debiting Crockwell and Bassett with articles furnished, and giving them credits, resulting in a balance of $87.97 due to plaintiff.

The complaint further alleges, that the defendants failed to perform the condition of the bond that Crockwell and Bassett should pay the plaintiff all moneys due, or which should become due, to it, under the agreement, or which should arise therefrom, and should perform the agreement, in that, the plaintiff, between July 3, 1875, and February, 1876, under the agreement and bond, at the request of Crockwell and Bassett, consigned to them sewing machines, which they sold after July 3, 1875, and before April, 1876 ; that, under the bond and clause eight of the agreement, Crockwell and Bassett, between the dates named, gave to the plaintiff their personal promissory notes, for the price of the machines, and at the rates for the machines, mentioned in the agreement ; and that " a list and description of said notes is herewith filed, marked Exhibit C, and made a part of this complaint." Exhibit C shows the date of each note, the time of its maturity, that all the notes were made by Crockwell and Bassett and payable to the plaintiff, and the amount of each note, or the balance due thereon, exclusive of interest. The complaint alleges that the whole amount of them is $1,766.10, to which is to be added $609.93, for interest on them, and $237.60, for attorney's fees for collection, making, in all, $2,613.63, and that Crockwell and Bassett have failed to pay that sum and owe it to the plaintiff.

The complaint further alleges, that the defendants failed to perform the condition of the bond that Crockwell and Bassett should pay to the plaintiff all moneys due, or which should become due, to it, under the agreement, or which should arise

therefrom, and should perform the agreement, in this, that, between July 3, 1875, and February 10, 1876, the plaintiff, under the bond and agreement, and at the request of Crockwell and Bassett, consigned to them sewing machines, which, prior to the last date, they sold, and took therefor the promissory notes of the vendees, payable to the order of the plaintiff, which notes Crockwell and Bassett indorsed and guaranteed and delivered to the plaintiff, this being done under clause two of the agreement; and that "a list and description of said promissory notes is herewith filed, marked Exhibit D, and made a part of this complaint." Exhibit D shows the date of each note, the time of its maturity, and its amount. The complaint alleges that the principal of the notes amounts to $358.83; and that neither their makers nor Crockwell and Bassett have paid them, but owe them to the plaintiff.

It thus appears that the suit covers four claims: (1) proceeds of sales of machines; (2) purchase price of attachments; (3) personal notes for machines consigned; (4) guaranteed notes for machines consigned.

Murphy and Streeper answered, denying specifically the breaches alleged; setting up that all the items in Exhibits A and B accrued more than two years before the suit was commenced, and it was not commenced within the time prescribed by the laws of Utah Territory; claiming a further credit of $203 on Exhibit A; denying that the non-payment of the notes covered by Exhibit C or by Exhibit D was a breach of the condition of the bond; and alleging that Crockwell and Bassett had no notice of the non-payment of the notes covered by Exhibit D. The answer further sets up, that, in March, 1876, the plaintiff, by its agent, applied to Murphy to become surety on a second bond, on a new contract with Crockwell and Bassett; and that a settlement, amounting to an accord and satisfaction, was had between the plaintiff and Crockwell and Bassett, as to the matters covered by the complaint, and its agent informed Streeper and Murphy thereof, and that the existing bond was discharged, and Murphy signed the second bond on that assurance, Crockwell and Bassett being then able to indemnify Streeper and Mur-

phy against liability on the first bond, and having since become insolvent. Crockwell and Bassett also answered.

The cause was referred to a referee to " hear, determine and report a judgment." He reported findings of fact and conclusions of law. He reported the facts to be as alleged in the complaint, as to the items of Exhibits A, B, C and D, with a credit on Exhibit A of $31.22, and that there was due from Crockwell and Bassett, on Exhibit C, at least $2,750, exclusive of allowance for attorney's fees, and on Exhibit D over $450, and due and unpaid from Crockwell and Bassett to the plaintiff, on account of the several matters set forth in the complaint, more than $3,000 ; that the Exhibits fully credited all sums remitted by Crockwell and Bassett ; and that there was no settlement or accounting between Crockwell and Bassett and the plaintiff, and no adjustment of their indebtedness to it, and no agreement or accord or satisfaction made in regard to such indebtedness. The report then proceeded : " 8th. In March, 1876, a new contract for the sale of machines was made between the plaintiff and said Crockwell and Bassett, and a new bond given by the latter, upon which the defendant Edmund H. Murphy became a surety. Pending the negotiations for such new contract, and before said Murphy became surety on the new bond, he inquired of George Wilkinson, who was the agent of the plaintiff to negotiate the new agreement, in regard to the past business and the object of the new bond, and said Wilkinson informed him, in substance, that said Crockwell and Bassett had done well, that the business was satisfactory to the plaintiff, and the plaintiff was about to give them a new contract, under which they would get a larger per cent. and have a better opportunity to make money. No other or further representations were made to said defendant Murphy prior to the execution by him of the new bond, and said representations were not false. At that time no settlement had been made of the accounts, but, from casually looking over the accounts, it appeared that Crockwell and Bassett had, in the shape of notes and leases, far in excess of what they owed, and, had the notes turned over to the plaintiff, and the notes and leases held by them, been good and collectible, the same would have far exceeded their liabilities. At that

time but a small portion of the indebtedness of Crockwell and Bassett to plaintiff was due, and it was not known but that the notes and leases taken by Crockwell and Bassett were generally good and collectible. 9th. About November, 1876, when the business of plaintiff was taken from Crockwell and Bassett, and turned over to another party, the said defendant Edmund H. Murphy, in the presence of defendant Crockwell and others, inquired of said Wilkinson, who was plaintiff's agent to turn over said business, in regard to the condition of the business of Crockwell and Bassett, when the following conversation occurred between said Murphy and Wilkinson: 'Q. *Mr. Murphy:* So far as the bondsmen are concerned, how did they stand? A. *Mr. Wilkinson:* So far as the boys (Crockwell and Bassett) have acted, they could not do better; everything is satisfactory and the business has been turned over to another party and everything is agreeable. Q. If that is the case the bondsmen have nothing further to bother about? A. No; everything is satisfactory and the business has been turned over.' This is the substance of representations made at that time, and I find that said defendant Murphy got the impression that he was released on the bonds. 10th. About the 28th of March, 1876, and during the negotiation for the new contract and bond, Crockwell and Bassett, desiring to obtain the defendant Streeper as surety on the new bond, called him into their office, and, in the presence of said Wilkinson, and during a conversation there, Charles H. Bassett informed said Streeper he had nothing to fear; and then Streeper asked Wilkinson if he was released or relieved on the first bond, and Wilkinson informed him he had nothing to fear on that, and made an affirmation which induced Streeper to believe he was no longer liable. Streeper did not execute the new bond. 11th. There is no evidence to show that any change has occurred in the financial condition of Crockwell and Bassett since the spring of 1876, and I find that no such change has occurred. 12th. At the time of the commencement of this action none of the notes guaranteed by Crockwell and Bassett, as aforesaid, had been due four years, and there is no evidence of any change in the financial condition of the

makers. 13th. George Wilkinson had no authority from plaintiff to bind the plaintiff by any declaration as to the release of the said bonds or either of them. And I find he did not intend to make any statement concerning the release which was untrue, or to deceive or mislead the defendants or any of them, and his statements were rather in the nature of assent to, or non-denial of, statements made by Crockwell and Bassett in his presence. I do not find he had or exercised any such apparent authority as should induce the defendants to rely on his statements concerning the business of Crockwell and Bassett or the satisfaction of said bonds, without further inquiry."

The referee found the following conclusions of law :

" 1. The non-payment of the several sums found due and unpaid from Crockwell and Bassett to the plaintiff, as in the findings of fact specified, constitute breaches of said bond, and for which breaches the sureties as well as the principals are liable.

2. The action on the bond at the time of the commencement thereof was not barred by the statute of limitations, in respect to any of said breaches.

3. The plaintiff is not estopped, nor its action barred or affected, against any of the debts, by reason of any representations made to the defendant Murphy or Streeper prior to or since the execution of the second bond referred to in the answer, nor was the execution of the second bond by the sureties procured by fraud.

4. The plaintiff is entitled to judgment that it have and recover of and from the defendants the sum of three thousand dollars, and the costs of this action, to be taxed."

Streeper and Murphy filed exceptions to the findings of fact after the seventh, and to all the conclusions of law. Judgment was entered for $3,000 and costs, against all the defendants. Streeper and Murphy appealed to the Supreme Court of the Territory, which affirmed the judgment. Murphy having afterwards died, his administratrix and Streeper appealed to this court. (See *Victor Sewing Machine Co.* v. *Crockwell*, 2 Utah, 557, and 1 West Coast Reporter, 428.)

It is assigned for error, that the complaint is insufficient to support the judgment, because the first two causes of action, those relating to Exhibits A and B, do not allege the value of the goods consigned, either by the article or in the aggregate. The objection made is, that, although the agreement states the shares to which the plaintiff and the consignees are to be respectively entitled, it fixes no price on the machines. The answer to this is, that the agreement states that the retail prices for which the machines consigned are sold, as reported by the consignees, are the prices on which the commissions of the consignees are to be calculated; and that the agreement fixes the prices of parts of the machines at forty per cent. discount from list prices, and the prices of attachments at the lowest wholesale rates. By the agreement, when the fixed commissions are deducted from the retail prices of sales, the rest belongs to the plaintiff; and Exhibit A shows the retail price of each machine sold, as reported by the consignees, and how much they retained beyond what they were entitled to retain as commissions, and Exhibit B shows the price of each attachment sold to the consignees. The Exhibits, in connection with the complaint, make the matter definite.

It is also contended, as to the first two causes of action, that the liability of the defendants arose on the sale of goods to the consignees, and that the two years' limitation applies to those causes of action. Murphy and Streeper were not parties to the agreement. Their liability arose on the bond exclusively. All the defendants were parties to the bond. This is a suit on the bond, and what are called by the defendants, causes of action, are only breaches of the condition of the bond. As the agreement was executory, it was necessary to set out consignments and sales, and resulting amounts due, to establish breaches. Even as regards the consignees, an action against them, if not on the bond, would be on the written agreement. The condition of the bond is, that the consignees shall pay all moneys which shall become due " under or pursuant to the within contract, or which shall arise therefrom, whether by book accounts, notes, renewals or extensions of notes, or accounts." We are of opinion that, this suit being on a written instru-

ment, the limitation was four years, and the action was not barred.

It is also urged, that Streeper and Murphy are not bound for the payment of the notes made or guaranteed by the consignees, and that their obligation was discharged when those notes were made or guaranteed. But it appears clear to us that the condition of the bond is, that the consignees shall pay all money which shall become due, by their notes, or their indorsements, or otherwise (the agreement making the indorsement a guaranty of payment). Language could hardly be stronger or more full. *Dixon* v. *Holdroyd*, 7 Ell. & Bl. 903.

It is also urged, that the facts found constitute an estoppel, as to Murphy and Streeper. The findings of fact negative the allegations of the answer setting up this defence. What occurred in November, 1876, is outside of any issue raised by the answer.

A point is made that the complaint does not aver that Murphy and Streeper had notice of the default of the consignees; that no notice is shown ; and that the bond contains no waiver of su ·h notice. Assuming that the point may now be taken, the findings are silent as to notice, but they show there was no prejudice for want of notice. Moreover, the condition of the bond is absolute, that the consignees shall pay all moneys which shall become due to the plaintiff under the agreement, the obligors waiving notice of non-payment on all notes executed, indorsed or guaranteed. As Murphy and Streeper did not make or indorse the notes, their waiver could only apply to a default by the consignees.

We see no error in the record, and

*The judgment is affirmed.*