**STANG & MITCHELL et al. v. UNITED STATES, for Use of WILLIAMS-CURRIDEN CONTRACTING CO., Inc.**

(Circuit Court of Appeals, Fourth Circuit. May 22, 1923.)

No. 2097.

1. **United States ☞74½, New, vol. 12A Key-No. Series—Subcontractor held not required to allow credit for owner's materials used in work.**

Where the original contract for government work required the contractor to furnish the labor and materials, but by a separate clause stated there were certain materials on the ground, owned by the government, which the contractor might use if he saw fit, a subcontract which expressly referred to the principal contract for the terms and specifications, and which required the subcontractor to furnish

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

the materials and labor for his portion of the work for a stipulated sum, did not require the subcontractor to deduct from that sum the value of government materials used by him in the work.

**2. Evidence ☞417(11)—Parol evidence of negotiations before written contract is inadmissible.**

In an action by a subcontractor against a government contractor for the balance due on the subcontract, where the contract did not authorize the contractor to deduct from the amount due the subcontractor the value of government materials used by the subcontractor, evidence that, during the negotiations, the principal contractor asked the subcontractor to reduce his figure because of the possibility of using the government steel, and that the subcontractor stated he had already bought his materials, but would use the government steel and turn that which he had bought over to the principal contractor, was inadmissible.

**3. Reformation of instruments ☞45(2)—Evidence of prior negotiations held not to authorize reformation of subcontract.**

Evidence by the principal contractor of an agreement by the subcontractor to turn over to the principal contractor the steel saved by the subcontractor's use of government steel, which was denied by the subcontractor, and was inconsistent with the subsequent action of the parties, would not justify a court of equity in reforming the subcontract.

In Error to the District Court of the United States for the Eastern District of Virginia, at Norfolk; D. Lawrence Groner, Judge.

Action at law by the United States, for the use and benefit of the Williams-Curriden Contracting Company, Inc., against Stang & Mitchell and the Ætna Casualty & Surety Company. Judgment for plaintiff, and defendants bring error. Affirmed.

Tazewell Taylor, of Norfolk, Va. (W. R. Ashburn, of Norfolk, Va., on the brief), for plaintiffs in error.

Thomas H. Willcox, of Norfolk, Va. (Willcox, Cooke & Willcox, of Norfolk, Va., on the brief), for defendant in error.

Before WOODS, WADDILL, and ROSE, Circuit Judges.

ROSE, Circuit Judge. This is a suit upon the bond of the contractor for a public work. Both brevity and clearness will be furthered by calling Williams-Curriden Contracting Company, Inc., the use plaintiff below, the plaintiff, and Stang & Mitchell, the principals in the bond in suit, the defendants; there being no issues upon which it is important to distinguish between their liability and that of their surety, their codefendant. The defendants were given a contract to construct for the government two steel seaplane hangars at Langley Field. The plaintiffs were subcontractors. Various differences arose between them, all of which have now been adjusted or disposed of by the verdict below, except an item of $6,885.70, said to be the value of certain reinforcing steel belonging to the government. The defendants under their original contract with the government were entitled to use it, and the plaintiffs say that the subcontract gave them the same right. This the defendants deny. The specifications which form part of the principal contract provided that:

"There is available for use on this work two hundred and sixty-one (261) 12″x18″x26′-0″ concrete piles and a quantity of reinforcing steel as per ac-

companying schedule, which will be furnished by the government without charge, but the contractor shall do all necessary carting, bending, and placing of same."

Another clause of the specifications, as usual, required the contractor to furnish all materials, labor, etc., necessary to complete the work. The specifications also provided that, where reinforcing steel, available on the site, is substituted for that shown in the drawings, an equivalent area with sufficient lap to develop full strength shall be used. It will be noted that there is nothing here which transferred the title of either the steel or the concrete piles to the defendant. Before the contract was made, they belonged to the government, and they remained its property afterwards. If the contractor wished, he might incorporate them in the structure he was erecting for the United States. He was not bound to use them, and, if he did not, he had no interest in them.

Having made their bargain with the government, the defendants entered into a contract with the plaintiff by which the latter bound itself to do the concrete and certain other portions of the work which the defendants had undertaken to do or have done for the government. The subcontract started off with reference to the principal contract, which with its specifications was expressly made a part of the subcontract. It was recited that the subcontractor had agreed to subcontract for a certain portion of the work and materials as therein set forth, with the understanding and agreement that, as to so much of the principal contract as had been thus subcontracted for, the subcontractor for the consideration named, namely $79,700, was bound as between itself and the contractor to stand in place of the latter and to do everything in, about, and concerning the same as is provided by contractor's contract with the owner and subject to all its terms and restrictions, to the end that the contractor shall be indemnified and saved harmless from all loss, damage, costs, and changes in and about said portions of the work and materials. The contract between the plaintiff and defendants provided that the plaintiff shall furnish all labor, tools, equipment, detailed plans, and materials necessary, and construct complete in place the following work, in accordance with the plans sheet No. 6505—130 to 137, inclusive, and accompanying specifications, as prepared and issued by the Construction Division of the Army. It then enumerated more in detail the things to be done. It said that the plaintiff was to furnish the materials, and it specified in somewhat general terms what those materials were to be; for example:

"All concrete piers, including forms, reinforcing rods, and the necessary dowels, reinforced concrete platform and ramp, including forms, reinforcing steel, riprap, cofferdam, and head wall."

[1] There is no dispute that, as a matter of fact, the plaintiff did use the government's reinforcing steel, and that such steel would have cost it in open market some thousands of dollars. Defendants' claim is that the money thus saved should be treated as a credit on the price defendants were to pay plaintiff. There is nothing in the subcontract which as much as hints at any such understanding. It is true that the

plaintiff bound itself to furnish all materials needed for its part of the work, and among the catalogue of these required things reinforcing steel was specially enumerated. It is also true that the plaintiff, instead of furnishing steel, used that belonging to the government; but its doing so cost the defendants nothing. If the plaintiffs had bought their own steel and used it, defendants would not have been a penny better off. The only difference would have been that in such event the government would still have the steel. There is nothing in the subcontract which suggests that the plaintiffs are to pay the defendants for any of the government's steel they may use. In short, as the subcontract was written, it was, so far as it dealt with the relations of the plaintiff and the defendant, plain and unambiguous.

[2] As concerned the portion of the work to which it related, its declared purpose was to put the plaintiff in the defendants' place. That meant, among other things, that plaintiff was to have the defendants' right to use the government steel. The plaintiff was to do a certain specified job, providing the labor and materials for it, and the defendants were to pay $79,700. The work was done, and the learned judge below was right in telling the jury the defendants were bound to pay the price, unless he erred, as defendants contend he did, in excluding certain parol testimony, which in their view puts a different phase upon the controversy. The story, as they would tell it, we know, because the learned judge below, in order that he might be better able to pass upon its admissibility, allowed it all to be told, though he afterwards felt constrained to withdraw it from the consideration of the jury. In substance, it was that at a conference held before the contract was executed, and at which there were present a number of persons, the defendants claimed that the price that the plaintiff was asking was too high, and that, as the government's steel could be used, plaintiff could afford to cut down its figure. The representative of the plaintiff, it is said, answered that this it could not do, assigning as a reason that they had already bought the steel for the work and had it on the ground. It is claimed that it was then agreed that the plaintiff would use the government's steel, and turn that which it had bought over to the defendants. All this it is admitted took place, if it took place at all, before the contract was signed.

[3] There can be no question that the court below was right in holding that this testimony did not come within any of the carefully limited exceptions to the rule that written contracts cannot be varied or contradicted by parol testimony of prior conversations, negotiations, or understandings. It may be added that the account which the defendants' witnesses give of the conversation in question was flatly contradicted by a number of those who were present, and, moreover, it is not easy to reconcile with the subsequent actions of the parties. The testimony in this record would not have justified a court of equity in reforming the contract. There was no error below.

Affirmed.