NEW AMSTERDAM CASUALTY CO. v. UNITED STATES SHIPPING BOARD EMERGENCY FLEET CORPORATION, to Use of UNITED STATES.

(Circuit Court of Appeals, Fourth Circuit. January 11, 1927.)

No. 2519.

1. Evidence ⬅441(9)—Parol evidence that written contract of sale with agreement to pay was mere matter of form, and articles sold intended to be credited on buyer's claim, held inadmissible.

Written contract of sale, with provision for payment of price at certain times, cannot be contradicted by parol evidence that this was a mere matter of form, and that it was the understanding that the articles were merely to be credited as an advancement on buyer's asserted claim for damages against seller.

2. Principal and surety ⬅123(3)—In absence of showing of damages, surety held not discharged by absence of notice of principal's default, not made condition of bond.

Even if bond guaranteeing payment under contract of sale be considered as requiring notice to surety of principal's default, yet giving of such notice not being included among the conditions of the bond, and surety not being damaged by absence of such notice, it being put on notice that payment had not been made by not receiving notice of payment for which contract expressly provided, absence of notice of default did not discharge surety.

3. Principal and surety ⬅73—Surety is liable for interest from time when it was its duty to make payment.

Surety being by bond required to make payment in 24 hours from demand is liable for interest from that time.

In Error to the District Court of the United States for the District of Maryland, at Baltimore; Morris A. Soper, Judge.

Action by the United States Shipping Board Emergency Fleet Corporation, to the use of the United States, against the New Amsterdam Casualty Company. Judgment for plaintiff, and defendant brings error. Affirmed.

Walter L. Clark and Roszel C. Thomsen, both of Baltimore, Md. (Stewart & Pearre, of Baltimore, Md., on the brief), for plaintiff in error.

A. W. W. Woodcock, U. S. Atty., of Baltimore, Md. (Chauncey G. Parker, Gen. Counsel U. S. Shipping Board, of Washington, D. C., and Douglas H. Rose, 2d, Asst. U. S. Atty., of Baltimore, Md., on the brief), for defendant in error.

Before WADDILL and PARKER, Circuit Judges.

PARKER, Circuit Judge. This is a writ of error to review proceeding in an action at law wherein judgment was rendered in favor of the plaintiff, United States Shipping Board Emergency Fleet Corporation, against the defendant, New Amsterdam Casualty Company, for the sum of $123,366.67. For convenience the parties will be referred to in accordance with the positions which they occupied in the District Court.

The suit was instituted against defendant to recover on a bond which it had executed to plaintiff, as surety for the American Shipbuilding Company, guaranteeing that that company would make payments for certain materials purchased from plaintiff in accordance with the terms of a written contract executed between the parties. The assignments of error present three points for our consideration: (1) Whether the court was correct in excluding parol testimony to the effect that it was not intended that payment should be made in accordance with the terms of the written contract, but that the contract was merely intended to evidence an advance payment by plaintiff on a claim of the American Shipbuilding Company; (2) whether defendant was released from liability on the bond by reason of failure of plaintiff to give notice of the default of the shipbuilding company; and (3) whether plaintiff was, in any event, entitled to judgment for anything in excess of $100,000, the penalty of the bond. For a proper understanding of these questions, a brief statement of the facts is necessary:

On November 19, 1919, plaintiff sold to the American Shipbuilding Company a quantity of shipbuilding material at Brunswick, Ga., for which that company agreed to pay the sum of $100,000. The contract was in writing and described the plaintiff as seller and the shipbuilding company as buyer. It gave a detailed description of the property sold, and contained among others the following provisions, which are the ones material to the questions here involved, viz.:

"Article II.—Payment.

"1. The buyer shall pay for all the material enumerated above the sum of one hundred thousand dollars ($100,000).

"2. Upon delivery and execution of this contract, there shall be no cash payment made by the buyer to the seller by reason of the cancellation agreement which is now pending before the district cancellations, claims and contract board, but he agrees to pay to the seller fifty thousand dollars ($50,-000), six months from the date of this agreement, and fifty thousand dollars ($50,000), twelve months from the date of this agreement. Payment to be made without interest.

"Article III.—Bond.

"At the execution of this contract, the buyer shall deliver bond satisfactory to the seller for the sum of one hundred thousand dollars ($100,000), guaranteeing the faithful performance of this agreement.

"At the time of the payment of the last installment due on the purchase price of the said material the buyer agrees to notify the seller that the last payment is being made. Upon such notice being received from the buyer, the seller agrees within twenty-four hours from receipt of the said last payment to notify the bonding company selected under this clause of the fact that the full purchase price has been paid by the buyer.

"The buyer hereby agrees to make such payments as above stipulated and if said payments are not made, the seller will notify the bonding company in writing and they will make payment for the buyer within twenty-four hours receipt of said notice."

At the same time, the defendant, as surety, executed the bond sued on, in the sum of $100,000, the condition thereof being as follows:

"Whereas, the said principal and Fleet Corporation entered into a written contract, bearing even date herewith, whereby the said principal purchases certain material, for the sum of one hundred thousand ($100,000) dollars, from said Fleet Corporation, which contract is hereby referred to and made a part hereof; and

"Whereas, said material is being delivered to the said principal upon condition that said principal shall pay the sum of fifty thousand ($50,000) dollars, on or before the expiration of six months from date hereof, and the further sum of fifty ·thousand ($50,000) dollars, on or before the expiration of one year from date hereof:

"Now, therefore, the condition of this ob-

ligation is such that if the said principal shall in compliance with the terms of aforesaid contract, pay unto the said Fleet Corporation the sum of fifty thousand ($50,000) dollars, on or before the expiration of six months from the date hereof, and an additional sum of fifty thousand ($50,000) dollars, on or before the expiration of one year from date hereof, unless the time for making either or both payments is extended by the Fleet Corporation, and shall indemnify, hold and save harmless the said Fleet Corporation from and against any and all loss, costs and expense, arising by reason of the principal failing to make said payments, then this obligation shall be null and void, otherwise, to be and remain in full force and effect.

"Provided, however, and this obligation is executed upon the following express conditions:

* * * * * * * * * * *

"Third: That all notices to the surety shall be sent by registered mail to the home office thereof, at Baltimore, Maryland."

The bond purported to have been issued for a premium of $1,000 and bore canceled revenue stamps to the amount of $10. The shipbuilding company failed to make the payments provided in the contract, and on November 10, 1921, was duly adjudged bankrupt. On April 29, 1922, demand was made upon the defendant under the bond, and, payment being refused by it, action was begun April 26, 1923.

Prior to the sale of the material to the shipbuilding company, it had been engaged in constructing ships for the government, first at a contract price, and later under a cost plus agreement. This agreement was canceled as of March 25, 1919, and claims were filed with the Cancellation Claims and Contract Board by the shipbuilding company aggregating $960,913.46, which were pending at the time of the purchase of the material by the company on November 19, 1919. It is alleged in one of the pleas of defendant that suit was filed in the Court of Claims by the trustee in bankruptcy of the shipbuilding company on May 23, 1923, to recover on these claims, and it is asserted in the brief of plaintiff, although we do not deem it material in passing upon the questions involved here, that judgment was entered by the Court of Claims on June 22, 1925, denying the claims and adjudging that the company was indebted to the United States, on a balance of the accounts, in the sum of $706,908.

In the course of the trial of this case in 16 F.(2d)—54

the District Court, defendant offered to prove by the district supply and sales manager of the Fleet Corporation, who executed the sales contract in its behalf, that, prior to the execution of the contract and bond sued on, the Southern District Cancellation Claims and Contract Board of the Fleet Corporation had calculated that the amount due the shipbuilding company was $584,823.14; that, as representing plaintiff, he offered to turn over the material in question to the shipbuilding company as a credit or advancement upon the amount which the plaintiff owed the shipbuilding company; that it was understood by himself and the representative of the company that the agreed valuation of $100,000 was not to be paid by the company, but that said amount was to be credited or considered as an advancement upon the amount due by plaintiff to the company; that he revamped a form of contract in use by plaintiff, and, in order to give some expression to the understanding that this was to be an advancement, drew it so as not to require a cash payment or the payment of interest; that the form of contract used called for a bond, and he did not know how to omit this provision, but that it was not the intention of the parties that the agreement should be anything more than a paper transaction, which would have the ultimate effect of giving the shipbuilding company an advancement of $100,000 on account of its claim against plaintiff. Defendant also offered to prove substantially the same facts by the vice president and general manager of the shipbuilding company. All of this testimony was excluded, and exceptions to its exclusion form the basis of the first and principal point urged by defendant.

[1] We think there can be no question but that the testimony offered was properly excluded. It falls clearly within the inhibition of the rule that parol testimony shall not be received to add to, alter, or deny the terms of a valid written instrument. The contract expressly provided that the shipbuilding company should pay $100,000 for the material, $50,000 of which should be paid 6 months and $50,000 12 months from date. The bond recited the purchase of the material and that it was being delivered on condition that the shipbuilding company should pay $50,000 6 months and $50,000 12 months from date, and guaranteed that it would make these payments in accordance with the contract. The testimony offered was to the effect that there was no contract to pay for the material at all and that the bond was not intended to guarantee the payment. A

clearer case of contradicting written instruments could not well be imagined. As said by Prof. Wigmore:

"Where an obligation is embodied in a single document, the very essence of the obligation is its validity and enforcement. Hence an agreement, alleged to have been a part of the transaction, that the obligation should *not be used as binding* or enforceable can never be permitted to be shown, for the writing necessarily determines that very subject to the contrary; in the ordinary phrase, it is necessarily inconsistent with the writing." Wigmore on Evidence (2d Ed.) vol. 5, § 2435.

Defendant relies upon a line of cases, of which Burke v. Dulaney, 153 U. S. 228, 14 S. Ct. 816, 38 L. Ed. 698, is typical, which apply the rule that "parol evidence is admissible to show that a written paper which, in form, is a complete contract, of which there had been a manual tradition, was, nevertheless, not to become a binding contract until the performance of some condition precedent resting in parol." That rule is well established, but it has no application here. Defendant, by the evidence offered, is not seeking to show a conditional delivery of the contract or bond, but to contradict their express provisions by showing that they were never intended, under any circumstances, to have any binding force whatever. The rule applicable here is well stated in Ruling Case Law as follows:

"Where the law requires a written instrument, or where parties adopt that mode of contracting, it is a matter of principle and policy to prevent inferior evidence from being used, either as a substitute for or an alteration of the written contract. Having deliberately put their engagements into writing, in such terms as import a legal obligation, without any uncertainty as to the object or extent of the engagement, it is conclusively presumed that the whole engagement of the parties and the extent and manner of their undertaking, have been reduced to writing, and parol evidence is not permitted to vary or contradict the terms of such writing, or to substitute a new or different contract for it." 10 R. C. L. 1018.

Nothing would be gained by reviewing the many cases in which this rule has been applied. Some of those which we deem apropos and controlling are Peerless Coal Co. v. Steffey & Findley (C. C. A. 4th) 297 F. 829; Stang & Mitchell v. United States (C. C. A. 4th) 290 F. 136; E. I. Du Pont de Nemours & Co. v. Kelly (C. C. A. 4th) 252 F. 523; McGuire v. Gerstley, 204 U. S.

489, 27 S. Ct. 332, 51 L. Ed. 581; Van Winkle v. Crowell, 146 U. S. 42, 13 S. Ct. 18, 36 L. Ed. 880; Bofinger v. Tuyes, 120 U. S. 198, 7 S. Ct. 529, 30 L. Ed. 649; Gilbert v. Moline Plow Co., 119 U. S. 491, 7 S. Ct. 305, 30 L. Ed. 476; Richardson v. Hardwick, 106 U. S. 252, 1 S. Ct. 213, 27 L. Ed. 145; Martin v. Cole, 104 U. S. 30, 26 L. Ed. 647; Brown v. Spofford, 95 U. S. 474, 24 L. Ed. 508; Forsythe v. Kimball, 91 U. S. 291, 23 L. Ed. 352; Parish v. U. S., 75 U. S. (8 Wall.) 489, 19 L. Ed. 472; Bank v. Dunn, 6 Pet. 51, 8 L. Ed. 316. See, also, Ryan v. Security Savings & Commercial Bank, 50 App. D. C. 292, 271 F. 366; Doyle v. Nesting, 37 Colo. 522, 88 P. 862; Mudge v. Varner, 146 N. C. 147, 59 S. E. 540; Orion Knitting Mills v. U. S. F. & G. Co., 137 N. C. 565, 50 S. E. 304, 70 L. R. A. 167, 2 Ann. Cas. 888; Allen v. Rundle, 50 Conn. 9, 47 Am. Rep. 599; Pollock v. Helm, 54 Miss. 1, 28 Am. Rep. 342.

In Richardson v. Hardwick, supra, 106 U. S. 252, 1 S. Ct. 213, 27 L. Ed. 145, the court had under consideration a written contract by the terms of which Richardson was to have a one-half interest in certain lands upon paying one-half of the purchase price paid therefor by Hardwick. Richardson sought to show that it was agreed that this amount might be paid by crediting him with one-half of the proceeds of timber and land sold. The court said:

"But evidence to establish this understanding is clearly inadmissible. In respect to this matter the contract is free from ambiguity. Its plain meaning is that Richardson was to make payment directly to Hardwick, in money of one-half the amount paid by the latter on the lands. It is, therefore, not competent to show by parol that payment was to be made in some other way than that specified in the written instrument."

A case directly in point was before the Supreme Court of Colorado in Doyle v. Nesting, supra, 37 Colo. 522, 88 P. 862. That was a suit upon a contract of guaranty, in which the guarantor had agreed to pay a certain sum of money on the failure of the principal debtor to do so. The guarantor proposed to show that at the time of executing the guaranty contract, the obligee stated to him that his signing it "was a mere matter of form" and that he "would never be called upon to meet it." The court held that this evidence was properly excluded, and said:

"By the written contract appellant had bound himself conditionally to pay the amount stated therein. By this contempora-

neous parol agreement, if the evidence directed to it is given the effect claimed for it by appellant, the written contract is directly contradicted; that is, appellant was not obligated as recited in the contract. To hold this evidence constituted a defense, and that the contract sued on could be so defeated, would be to violate the rule that a written contract cannot be varied or contradicted by evidence of a contemporaneous oral agreement."

[2] Coming to the second point, we do not think that the defendant was discharged from its liability under the bond by reason of the failure of the plaintiff to give notice of the default of the shipbuilding company. It will be noted that the giving of such notice was not included among the conditions of the bond. The condition, "that all notices to the surety shall be sent by registered mail to the home office thereof, at Baltimore, Md.," was not a condition requiring the sending of any notice, but one providing to what place notices otherwise required should be sent. The contract between the plaintiff and the shipbuilding company was by reference made a part of the bond, but the agreement as to notice contained therein is that within 24 hours after the payment of the last installment on the purchase price of the material plaintiff would notify the bonding company that the full price had been paid. This provision was evidently inserted for the benefit of the shipbuilding company, probably that it might secure the prompt release of any security given the bonding company or save further payment of premiums.

Following this provision is the one upon which defendant relies: "The buyer hereby agrees to make such payments as above stipulated and if said payments are not made, the seller will notify the bonding company in writing and they will make payment for the buyer within twenty-four hours receipt of said notice." This clause was manifestly inserted, not for the benefit of the bonding company, which was not a party to the contract, but for the benefit of plaintiff, to insure that a bond would be executed guaranteeing prompt payment upon demand. And this interpretation is borne out by the provision of the bond which contemplates that the time of payment might be extended by plaintiff; for, if plaintiff might extend the time of payment, certainly failure to make payment on the date due could not have been deemed of such importance by defendant as to demand immediate notice, whereas the fact that extension was contemplated was a reason for providing for payment on notice

and demand. Notice to the bonding company was to be given promptly upon payment, and, if this notice was not given, the bonding company was placed upon notice by the very absence of notice that payment had not been made. The duty to make payment on its part did not arise, however, until notice was given it by the plaintiff, whereupon it was to make payment within 24 hours. This, we think, is the reasonable interpretation of the clauses in the contract. It would be most unreasonable to interpret the clause relied upon as a condition precedent to defendant's liability under the bond, when defendant, in drafting the bond, did not insert it among the conditions upon which its liability was to depend. "Expressio unius est exclusio alterius."

We have carefully considered the authorities relied upon by defendant, but we do not think that they have any application to a case such as this. They hold that failure to give notice of default in accordance with the terms of a condition contained in a fidelity or indemnity bond releases the surety from further liability thereunder. There can be no question that such is the law, but, as pointed out above, the bond sued on in this case does not incorporate a requirement for notice of default among the conditions of the bond. In those cases notice of default was provided as a condition of liability, doubtless because the liability of the surety was contingent upon the bad faith or breach of contract of the principal which would be exclusively within the knowledge of the obligee, and, if there was to be a claim of liability, the surety desired prompt notice, so that it might investigate the circumstances upon which its liability was to depend. Here the liability of the principal was fixed and the bond was given to guarantee that it would make payment in accordance therewith. In such case, there was no reason to insert a provision for notice among the conditions of liability and, as we have seen, this was not done.

As the giving of the notice of the default of the shipbuilding company was not made a condition precedent to liability under the bond, and as there is neither allegation nor proof that defendant suffered any loss or damage by reason of the fact that plaintiff did not give the notice within a reasonable time, we think that, even if the contract be construed as requiring notice, failure to give same would not bar a recovery by plaintiff. It is the duty of the surety to see that the principal performs his contract in accordance with its terms and to perform it him-

self if the principal fails. Rhett v. Poe, 2 How. 457, 485, 11 L. Ed. 338. For this reason, in the absence of express provision in the contract of suretyship, the surety is ordinarily not entitled to notice of default. Streeper v. Sewing Machine Co., 112 U. S. 676, 687, 5 S. Ct. 327, 28 L. Ed. 852; Clark v. Gerstley, 204 U. S. 504, 27 S. Ct. 337, 51 L. Ed. 589; 21 R. C. L. 1072; Barhydt v. Ellis, 45 N. Y. 107; First Nat. Bank v. Babcock, 94 Cal. 96, 29 P. 415, 28 Am. St. Rep. 94. And even where there is a requirement of notice, if this requirement is not made a condition of the bond, the surety company cannot complain of the failure to give notice where no damage has resulted therefrom. City of Montpelier v. National Surety Co., 97 Vt. 111, 122 A. 484, 33 A. L. R. 489, 497; Van Buren County v. American Surety Co., 137 Iowa, 490, 115 N. W. 24, 126 Am. St. Rep. 290; Ætna Indemnity Co. v. Waters, 110 Md. 673, 73 A. 712; United Surety Co. v. Summers, 110 Md. 95, 72 A. 775; School District v. McCurley, 92 Kan. 53, 142 P. 1077, Ann. Cas. 1916B, 238; Illinois Surety Co. v. Huber, 57 Ind. App. 408, 107 N. E. 298; Molin v. New Amsterdam Casualty Co., 118 Wash. 208, 203 P. 8.

As stated above, there is neither allegation nor proof here that the defendant sustained any loss or damage as a result of the failure of plaintiff to notify it of the default of the shipbuilding company. On the contrary, defendant was put on notice that payment had not been made by reason of the fact that it did not receive the notice of payment for which the contract expressly provided. As the bond which defendant signed as surety is a guaranty bond, it may not be amiss to observe that, even in the case of a guarantor entitled to notice, "there must be not only a want of notice within a reasonable time, but also some actual loss or damage thereby caused to the guarantor, and if such loss or damage does not go to the whole of the amount of the claim, but is only in part, the guarantor is discharged only pro tanto." 28 C. J. 986; Reynolds v. Douglass, 12 Pet. 496, 502, 9 L. Ed. 1171; Rhett v. Poe, 2 How. 457, 485, 11 L. Ed. 338; Louisville Mfg. Co. v. Welch, 10 How. 461, 474, 475, 13 L. Ed. 497; Davis v. Wells, 104 U. S. 159, 170, 26 L. Ed. 686. And to be available as a defense the lack of notice and resulting damage must be pleaded. 28 C. J. 1022. And the burden of proof rests upon the guarantor to establish same. 28 C. J. 1025, 1026; Rhett v. Poe, supra; Mamerow v. National Lead Co., 206 Ill. 626, 69 N. E. 504, 99 Am. St. Rep. 196; Bishop v. Eaton,

161 Mass. 496, 37 N. E. 665, 42 Am. St. Rep. 437; Ward v. Wilson, 100 Ind. 52, 50 Am. Rep. 763.

[3] The only point which remains for our consideration is whether the District Judge was correct in charging the jury that they should allow interest on the amount due under the bond from the date of the demand on defendant. We think that he was. Defendant undertook that the shipbuilding company would make the payments in accordance with the terms of its contract. It was not liable under the bond until demand was made upon it for payment, but upon such demand it was its duty to make payment within 24 hours. There can be no doubt that upon withholding payment it became liable for the amount due with interest from the time when it was its duty to have made payment, even though the addition of the interest causes the recovery to exceed the penalty of the bond. Illinois Surety Co. v. John Davis Co., 244 U. S. 376, 381, 37 S. Ct. 614, 61 L. Ed. 1206; U. S. v. U. S. F. & G. Co., 236 U. S. 512, 35 S. Ct. 298, 59 L. Ed. 696; Ives v. Merchants' Bank of Boston, 12 How. 159, 164, 13 L. Ed. 936; U. S. v. Quinn (C. C. A. 2d) 122 F. 65; London & Lancashire Indemnity Co. of America v. Smoot, 52 App. D. C. 378, 287 F. 952; Montpelier v. National Surety Co., 97 Vt. 111, 122 A. 484, 33 A. L. R. 489, 498.

The rule applicable is thus stated in Ruling Case Law: "But the later and apparently preponderance of authority is to the effect that whenever the penalty becomes a debt due and payable as to the surety, he is as much liable for interest thereon as if he had been originally the principal debtor, not however, as a part of the debt for which he became responsible, but as damages for its detention, and it is immaterial that the allowance of interest may make the judgment in excess of the penalty named in the bond." 21 R. C. L. p. 1087. See, also, notes in Ann. Cas. 1914C, 1194, and 55 L. R. A. at page 384, and cases cited.

The reason for the rule is forcibly stated in the leading case of Bank of Brighton v. Smith, 12 Allen (Mass.) 243, 90 Am. Dec. 144, as follows:

"The surety has a right to say, I agreed to be liable for such losses as may be occasioned by the principal only to the extent fixed, although that loss is in part made up of interest on money wrongfully taken. But it does not follow that the surety can in no case be held liable for interest upon the penalty. The true rule seems to be that the surety may be liable for interest on the penalty,

not as a part of the debt for which he originally became responsible, but as damages for its detention. There is a plain distinction to be observed between cases in which interest is given by way of damages and those in which it constitutes a part of the debt, as it does in contracts in which there is a promise to pay interest. As a general rule, in all cases in which a debtor is in default for not paying money in pursuance of his contract, he is liable for interest thereon from the day of his default, and when a demand is necessary to put the debtor in fault, interest is to be given only from the demand. Where interest is not stipulated for as part of the contract, it is given by way of damages for the detention of the money. If the surety becomes charged by the default of the principal for the amount of the penalty, or any portion of it, it is his duty to pay the same on demand; and if he neglects or refuses, the general principle above stated applies, and the interest is added by way of damages for his own default, not as enlarging in any degree his liability for the misconduct of the principal. The liability of an insurer upon a policy of insurance illustrates the principle applicable here. The contract of an insurer is a contract of indemnity. It is an engagement to pay an amount not exceeding a given sum on the happening of certain losses; and yet interest is recoverable upon the whole amount insured, after proof of loss and demand of payment."

There was no error, and the judgment of the District Court is affirmed.

Affirmed.