GORSCHE *v.* FIRST NATIONAL BANK OF MANISTIQUE.

**1.** BILLS AND NOTES—FOREIGN BILLS OF EXCHANGE—NONPAYMENT —PROTEST—WAIVER—QUESTION FOR JURY.

In an action against a bank for money paid for foreign bills of exchange, where nonpayment by the foreign bank was not protested, the trial judge properly instructed the jury that plaintiff could not recover unless it was shown that defendant had waived protest, in view of the negotiable instruments law (2 Comp. Laws 1915, § 6193), requiring protest thereof, and the doctrine of commercial jurisprudence of most civilized nations to the same effect.[1]

**2.** EVIDENCE—PAROL EVIDENCE INADMISSIBLE TO VARY TERMS OF WRITTEN CONTRACT.

Oral evidence of a preliminary parol agreement is inadmissible to vary or contradict the unambiguous provisions of a foreign bill of exchange, in the absence of a showing of fraud or mistake.[2]

**3.** SAME—DECLARING ON ORAL CONTRACT DOES NOT CHANGE LAW.

Declaring upon a claimed oral contract, which, if made, was merged in the written contract, does not change the legal rights of the parties, or render admissible evidence of the oral contract to vary or contradict the terms of the written contract.[3]

**4.** SAME—EXCEPTIONS TO RULE—EVIDENCE ADMISSIBLE UNDER EXCEPTION TO GENERAL RULE MUST BE CONSISTENT WITH WRITTEN CONTRACT.

To bring a case within the recognized exception to the general rule that where the written contract is obviously, or possibly, regarded as incomplete, parol evidence may be admitted to complete the entire agreement as made, the parol evidence must be consistent with, and not contradictory of, the written instrument.[4]

Error to Schoolcraft; Fead (Louis H.), J.   Sub-

[1]Bills and Notes, 8 C. J. § 867; [2]Evidence, 22 C. J. § 1669; [3]Id., 22 C. J. § 1663; [4]Id., 22 C. J. § 1720.

mitted April 15, 1925.     (Docket No. 92.)     Decided January 28, 1926.

Assumpsit by George Gorsche, assignee of Matt Schustarich and another, against the First National Bank of Manistique for money paid for foreign bills of exchange.     Judgment for defendant.     Plaintiff brings error.     Affirmed.

*James C. Wood,* for appellant.

*Virgil I. Hixson,* for appellee.

STEERE, J.     Plaintiff's assignors, Matt and Peter Schustarich, are brothers, and natives of Austria who, prior to the events involved here, came to the United States from their home in Austria-Hungary.     In 1914 they were living in Manistique, Michigan, and carried accounts in defendant bank.     Preparatory to returning to their home in Austria, they, on July 24, 1914, withdrew their deposits from the bank and purchased from it $2,400 worth of foreign exchange in Austrian kronens, at the rate of exchange of that date, drawn on the Laibacher Credit Bank, of Laibach, Austria, near their former home.     Matt's check on that bank was for 7,000 kronens, costing him $1,400 in American money, and Peter's for 5,000 kronens costing him $1,000.     The consideration paid to defendant for its services in making out the exchange papers and transmitting the funds to cover these checks was about $30.     On that date the defendant bank transmitted the usual vouchers and instructions for covering those items of foreign exchange to the National City Bank of New York, its correspondent bank with which it had ample deposits and through which its foreign business was transacted.     Ladislov Pecanka, a witness for plaintiff whose testimony was taken by deposition, was an "over-director" of the Laibacher Credit Bank on which these drafts were

drawn, and had been connected with that bank since 1900. He testified that—

"In 1914 a credit was established at this bank to cover these checks by the Wiener Bank Verein of Vienna, Austria. * * * In July, 1914, my bank had received funds from the Wiener Bank Verein with which to pay these checks. * * * This credit was established August 29, 1914, and still remains."

On July 29, 1914, the two brothers left New York on their journey back to their home in Austria, taking passage in a steamer bound for Havre, in France, having with them their checks, or foreign bills of exchange payable to them, which they had procured from defendant. When they arrived at Havre the World War of 1914 had just begun. They were arrested as alien enemies by the French authorities, interned as prisoners of war, and held in custody as such until May 27, 1919, when they were released and allowed to resume their journey to their homes in Austria.

While prisoners in France they wrote defendant, on October 8, 1915, from St. Glan, Lake du Nord, France, telling of what had befallen them, that their checks obtained from defendant were "not yet cashed and are still in our hands." Defendant had told them, "we could always present the checks at your bank again and you yourself would cash them," but they did not know whether when released they would go back to America or continue their journey to Austria.

At that time the normal rate of exchange between the United States and Austria was little affected by the war, and on November 9, 1915, defendant replied expressing sympathy with the brothers in their misfortune, suggesting that if they so desired they could then return the checks to defendant, which would credit them to their accounts and send the brothers French exchange in francs for such money as they might want while interned in France.

On December 3, 1915, they replied from St. Glan,

France, declining to send the checks to the bank for the two reasons that, "we think the war will never last a long time," and, "I would not like to return the checks to Amerika, because the traffic on the sea is not sure enough yet and even dangerous."   Defendant had no further word from the Schustarich brothers until the summer of 1919, when a letter was received from Matt dated "Jernejs Dorf, 15 July, 1919," giving his postoffice address "Jernejs Dorf N. 27, P. O. Chernomelj Krain, Jugoslavia."   In this he advised in rather broken but understandable English that they were back home and he had asked the Laibacher Credit Bank for their money but could not get it and was answered that the money represented by the checks (which he described), "are always at your bank in Manistique, Mich.," asking what he should do to have the money returned to him.   In reply, defendant, on August 25, 1919, acknowledged receipt of the letter, stating the matter had been taken up with its New York bank and it was expected that it would be promptly heard from.   Considerable correspondence passed between defendant and its New York bank and defendant and Matt.

War was declared between Austria and the United States December 17, 1917.   Treaty of peace between the two countries was signed August 25, 1921, and ratified by the United States senate October 18, 1921. Plaintiff's witness Pecanka testified, touching disturbed conditions resulting from the war, as follows:

"As a matter of fact, three months after beginning of the war in 1914, business relations were practically terminated between Austria and the United States. Certainly after the beginning of the war between the United States and Austria it was impossible to have banking and other commercial relations with the United States.   Business relations, banking and otherwise, were resumed between Austria and the United States in the spring of 1921.   The kingdom of Jugoslavia was established December 1, 1918."

The Schustarich brothers' testimony was also taken

by deposition before an American consul. They testified that upon May 27, 1919, they made their first and only visit to the Laibacher Credit Bank and presented their checks for payment to some clerk at the bank whom they did not know and who refused payment, advising them to take it up with the First National Bank of Manistique, Michigan. As letters were not allowed to be sent to the United States from Laibach he told them how to get a letter through. Their testimony as to inducements by the bank officers when they bought this exchange was to the effect that defendant's cashier guaranteed the checks, promising amongst other things that "if you buy a check from this bank for kronen you can always get your dollars back if the check is not cashed." They were not ignorant of what they bought.

Matt testified:

"He (the cashier) spoke to me some time in this vein, and being convinced by him, I bought a check for kronen with the $1,443.27 I had on deposit with the bank. * * * I made a mistake in the previous question saying that check purchased by me was for $1,443.27, as a matter of fact it was for an even $1,400.00. For the two kronen checks, one for $1,400.00 issued in my favor, and the other for $1,000.00 for my brother, I paid about $19.20 to the cashier of the Manistique National Bank. I think that this sum was the bank's fee for selling kronen checks for dollars, in other words the conversion and expense charges of the bank."

Peter testified:

"At the time of this transaction my brother, Matt Schustarich, was with me. He bought a check for $1,400.00 worth of kronen at the same time that I purchased a check for $1,000.00 worth of kronen. For these two checks aggregating $2,400.00 we paid the bank a fee of about $19.20. This was the bank's charges for selling kronen checks."

Plaintiff Gorsche who was with them at the bank testified at the trial in support of their claims, to the

effect that both the cashier and assistant cashier guaranteed "that they would get their money in case these checks would be refused at the Laibach bank, or any other bank," on the strength of which they accepted the checks, and "the money was guaranteed by the checks furnished the two boys.   That was the guaranty."   The cashier and assistant cashier of the bank testified that no such assurances, promise or guaranty as claimed by plaintiff were made by them when the exchange was bought, and the whole transaction was but a sale of foreign exchange to the Schustarich brothers, in kind and amounts of Austrian money they ordered, executed in the customary manner at the regular rate of exchange on that date.

The written evidence of this transaction given the brothers consisted of original foreign drafts or checks with duplicates of the bank stub entries, being the same as to each, except number and amount.   Those delivered to Matt are as follows:

"Original check for 7,000 kronen.
"FIRST NATIONAL BANK.
"Manistique, Michigan, July 24, 1914.   No. 226525.
"Please pay against this check from our balance (duplicate unpaid) to the order of Matt Schustarich the sum of seven thousand kronen.
"FIRST NATIONAL BANK,
"WM. J. SHINAR, a Cashier.
"To LAIBACHER CREDITBANK,
      Laibach, Austria.
"Endorsed, Matt Schustarich.
        "Remitter's Receipt for Foreign Draft.
"Received July 24, 1914.
"From Matt. Schustarich.
"By:
"The sum of $1,419.20.
"In payment of draft No. 226525.
"Amounting to 7,000 kronen.
"In favor of Matt Schustarich.
"Drawn on:
        Austria."

On May 20, 1921, the brothers sent their original checks to plaintiff Gorsche with an assignment of all claims, demands, and money due them, arising out of certain moneys deposited with defendant July 24, 1914, for which it issued them "certain drafts or orders for payment of 7,000 kronen and 5,000 kronen, respectively." Gorsche notified defendant that he was owner of any right of action to recover said money and any settlement of the matter must be made with him. He thereafter commenced this action, filing his first declaration on August 22, 1922. Defendant appeared and pleaded November 9, 1922. On June 5, 1924, plaintiff filed an amended declaration by leave of the court containing the common counts and a lengthy special count relating the transaction under consideration and especially counting on defendant's alleged oral guaranty that if the drafts then purchased were not paid by the Austrian bank it would "pay back" to the Schustarich brothers the $2,400 it had received from them.

Defendant's plea was the general issue of denial with abundant special notices which need not be detailed at length.

At the close of the testimony defendant moved for a directed verdict on grounds summarized as follows:

"That testimony shows transaction was an ordinary purchase of foreign draft; that credit set up to meet same has been at foreign bank and is still there; that drafts not presented for payment until May 27, 1919, long after drawn; that no notice of nonpayment given until July 15, 1919; that no protest of drafts, and being foreign drafts—protest, notice of protest, and dishonor were all necessary to be shown; that so far as claim made that there was a special contract, the contract was in writing, made up of papers, the ordinary sale of foreign draft, showing that the money was received, not on a contract, but in the purchase of a foreign draft and nothing else; that the testimony offered, to show a different contract, is entirely in-

competent, and the testimony so received should be stricken out."

Plaintiff's theory of the issue before the court was and is that his declaration does not count and is not planted upon the checks but upon an oral proposal and agreement—

"that defendant bank should transmit the $1,400 and $1,000 respectively, or its equivalent in Austrian kronen, to the Laibacher Credit Bank at Laibach, Austria, and issue its checks drawn upon such bank for 7,000 kronen to the order of Matt Schustarich and 5,000 kronen to the order of Peter Schustarich; and that if such checks should not be paid by the Laibacher Bank, upon presentation, the Schustarich brothers could return the checks to defendant bank and it would pay them back the $1,400; and $1,000 respectively, together with the fees paid,"

and relying upon such agreement the brothers bought the exchange; that the question of whether such agreement was made should be submitted as an issue of fact to the jury, and if plaintiff prevailed upon that issue the measure of damages would be the $2,400 received by defendant for the checks, and fees paid.

After listening to the arguments of counsel upon the various propositions of the law they contended for, the trial court held and charged the jury, in substance, that the claimed oral agreement of guaranty relating to the foreign drafts was not competent to contradict or vary their terms as written contracts, and all testimony as to what was talked between the parties or orally agreed upon before the execution and delivery of the drafts was only competent to consider as bearing upon the question of whether defendant waived protest in case of refusal by the foreign bank upon which the drafts were drawn to pay them when duly presented there for payment.

Eliminating all questions of laches by delay, estoppel, etc., the court found the undisputed testimony showed

the drafts were presented for payment on May 27, 1919, at the foreign bank upon which they were drawn and payment was refused, and charged the jury that it then became imperative for the brothers to legally protest the same in order to hold defendant, the drawer of the drafts; that it was not shown or claimed these drafts were ever protested and therefore plaintiff could not recover unless it was shown that defendant had waived protest, which was submitted to the jury as a question of fact to be determined from all the facts and circumstances in the case, including what conversation took place at the time the drafts were issued.     The further instruction was then given that if the jury should find it shown by a preponderance of evidence that there was a waiver their verdict should be for plaintiff for the value of 12,000 kronen on May 27, 1919, the date the drafts were presented to the drawee and dishonored, which, the testimony showed, was $390 in United States money, and their verdict should be for that amount with interest at 5 per cent. per annum from that date to the time of the verdict.     The jury failed to find waiver of protest and rendered a verdict for defendant, followed by judgment thereon.

Neither party requested that the issue of waiver be submitted to the jury.     Not having declared upon the drafts, and planting his right to recover upon a claimed distinct oral contract, the question of waiver of protest may be conceded as foreign to plaintiff's theory of the case, while defendant's counsel suggests that if any error appears it consists in admitting preliminary oral negotiations for consideration of the jury in passing upon the question of waiver.     Without discussing the legal aspect of that proposition, it is sufficient to note that authority may be found for the course pursued by the court (2 Daniel on Negotiable Instruments [6th Ed.], chap. 32, p. 1244 *et seq.*), and, as the jury

disposed of that issue neither party is in a position to complain.

The court's instructions touching failure to protest are in harmony with our own negotiable instruments law and the doctrine of commercial jurisprudence of most civilized nations concerning foreign bills of exchange, said to be the first in development of the law-merchant. The so-called checks or drafts, which the Schustarich brothers testified they bought from defendant and plaintiff put in evidence, appear on their face to be, and in truth are, foreign bills of exchange, as distinguished from domestic or inland bills of exchange; the rights and remedies of the two not being coincident in certain important particulars. Our uniform negotiable instruments act, which in general closely follows the prevailing, well-seasoned bench and statute law upon the subject, provides as to protest as follows:

"SECTION 154. Where a foreign bill appearing on its face to be such, is dishonored by nonacceptance, it must be duly protested for nonacceptance, and where such a bill which has not previously been dishonored by nonacceptance is dishonored by nonpayment it must be duly protested for nonpayment. If it is not so protested, the drawer and indorsers are discharged. Where a bill does not appear on its face to be a foreign bill, protest thereof in case of dishonor is unnecessary." 2 Comp. Laws 1915, § 6193.

Following sections specify in detail the form, time and manner in which such protest must be made.

The general rule that preliminary or contemporaneous oral agreements cannot be shown to contradict or vary the terms of a written contract is too well settled to call for extended discussion. As applied to negotiable instruments, where neither fraud, ambiguity or mutual mistake appear, that rule is recognized as of paramount importance. These foreign bills of exchange are absolute on their face, contain

no ambiguity, both parties knew what they were and what they were issued for. No fraudulent representation as to any present or past fact is shown, and plaintiff's case is planted on a distinct, promissory oral contract by defendant guaranteeing to return the money paid for them if not honored when presented for payment to the foreign payor.

"Therefore, if a bill or note be absolute upon its face, no evidence of a verbal agreement made at the same time, qualifying its terms, can be admitted." *Phelps* v. *Abbott,* 114 Mich. 88.

*Vide,* also, *Forsythe* v. *Kimball,* 91 U. S. 291.

The claimed distinct, independent oral contract was directed solely to the purchase of exchange. Whatever was said or agreed upon at that time related to and culminated in the purchase of these two foreign bills of exchange, which are the written evidence of the transaction. Declaring upon the claimed oral guaranty does not change the legal rights of the parties. Plaintiff himself recognized the limit of the guaranty he claimed when he testified that the "money was guaranteed by the checks furnished the two boys. That was the guaranty." And that guaranty was to pay the money in amount and kind specified in the checks when dishonored by the named payor if properly protested as the law requires, unless protest was waived.

A major contention in plaintiff's brief is that the case falls within the sometimes recognized exception to the general rule that where the written contract is obviously, or possibly, regarded as incomplete, parol evidence may be admitted to complete the entire agreement as made. To bring a case within that exception the parol evidence must be consistent with and not contradictory of the written instrument. Without reviewing in detail the cases cited from this jurisdiction where admission of parol evidence has been recognized

in connection with written agreements, it can be said that none of them are in conflict with the general rule. The exceptions there pointed out relate to the contents of lost instruments, collateral contracts which did not contradict or vary the terms of the written instrument, conditional or nondelivery of a written contract, lack of consideration, uncertainty or ambiguity in the terms of the writing, where on its face the writing obviously did not contain the whole agreement and the oral evidence completed it without conflicting with it, etc.

In the recent case of *Karnov* v. *Goldman,* 229 Mich. 551, it was said (quoting from the syllabus):

"Testimony of an oral contract is not admissible to vary the terms of a written contract whereby defendants, private bankers, undertook to transmit money to be deposited in plaintiff's name in a bank in Russia."

To hold that, in the absence of fraud or mistake, oral evidence of a preliminary parol agreement is competent to vary or contradict the unambiguous provisions of a foreign bill of exchange, would destroy a settled principle of the law-merchant approved by legislative and judicial wisdom of ages.

The judgment will stand affirmed.

BIRD, C. J., and SHARPE, FELLOWS, WIEST, CLARK, and MCDONALD, JJ., concurred.

Justice MOORE took no part in this decision.